**YOUNG v. JONES et ux. (No. 1079.)**

(Court of Civil Appeals of Texas. El Paso. May 20, 1920.)

**1. Mines and minerals ⊗⇒73—Oil lease held privilege, and not present conveyance.**

Oil and gas lease, granting described premises "for the sole and only purpose of mining and operating. for oil and gas, and of laying pipe lines, and of building tanks," etc., designating the right of the lessee as a "privilege," and providing that lessee's rights should terminate on failure to drill within one year or make payment of specified amount on or before certain date, *held* a mere right, franchise, or privilege to enter on the land, and to appropriate a portion of oil and gas discovered therein, and not a conveyance of the oil and gas as a present interest in the land, the commencement of a well, or payment of rental on or be-before specified date, being a condition precedent to the continuation or extension of the lessee's privileges after such date.

**2. Mines and minerals ⊗⇒73—Time regarded as essence of oil and gas lease.**

In oil and gas leases, time is regarded as the essence of the contract, and the rule that a lease is construed most strongly against the lessor does not apply.

**3. Evidence ⊗⇒20(1)—That development is inducing consideration to lessor in oil and gas lease is common knowledge.**

In oil and gas leases, it is a matter of common knowledge that the development of the oil and gas is, in most instances, the main inducing consideration to the lessor, that the privilege of paying rentals in lieu of such development is for the benefit of the lessee, and that undue delay in prospecting often produces a serious loss to the lessor.

**4. Mines and minerals ⊗⇒79(6) — Forfeiture of oil lease for failure to pay rental within specified time.**

Where oil and gas lease merely gave lessee the right to enter on land, and take a portion of the oil and gas therefrom, without conveying a present interest therein, and provided for the termination of lessee's right, on failure to drill or make specified payment on or before certain date, the failure to drill or pay the stipulated amount on or before such date, constituted a forfeiture against which equity will not give relief, though failure to make necessary payment was due to a mistake as to amount, and though an amount less than that specified was tendered prior to such date, and the full amount tendered subsequent thereto.

**5. Mines and minerals ⊗⇒79(3)—Lessee could not extend oil lease as to only one part of land by payment of only a portion of the rental.**

Where lessee assigned his interest in oil lease in different portions of the land in severalty to different persons, who in turn assigned their interests to the same person, such person,

holding the lessee's interest as to the entire land, could not extend lease as to only a portion of the land by payment of only a portion of the rental, though lease provided that, on assignment as to a part of the land, the default of assignee should not affect lease in so far as it covered other portions of the land as to which rental was duly paid; such provision being applicable only in case the rights in different portions of the land were held by different persons, the optional right to pay rental being indivisible, where rights as to all the land were vested in one person.

**6. Contracts ⊗⇒170(1)—Construction by the parties to be considered.**

Interpretation placed upon a contract by the parties thereto, where the meaning is uncertain, is to be considered by the court in construing the contract.

Appeal from District Court, Callahan County; Joe Burkett, Judge.

Suit by William L. Jones and wife against R. M. Young. From the judgment, defendant appeals, and plaintiff cross-assigns error. Affirmed in part, and reversed in part, and rendered for plaintiff.

R. M. Rowland, of Ft. Worth, C. M. Oakes, of Tulsa, Okl., and W. R. Ely, of Baird, for appellant.

B. L. Russell, of Baird, and Dallas Scarborough, of Abilene, for appellees.

HIGGINS, J. On December 7, 1917, Wm. L. Jones and wife, as lessors, entered into a written contract with C. L. Alvis, trustee, as lessee, the material portions whereof read:

"Witnesseth, that the said lessor, for and in consideration of seventy-six and $25/100$ dollars cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, on the part of lessee to be paid, kept, and performed, has granted, demised, leased, and let, and by these presents does grant, demise, lease, and let, unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines, and of building tanks, power stations, and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the county of Callahan, state of Texas, described as follows, to wit: Being 73 acres out of the A. T. Burnlee survey and 80½ acres out of the Burnlee survey and 152 acres out of the U. Bass survey No. 9, abstract No. 14, being all of land owned by us in Callahan county, Texas, conveyed to us by Nattie L. Rust, as shown by record in Callahan county, Texas, Book 58, page 148, and containing 305.3 acres, more or less.

"It is agreed that this lease shall remain in full force for a term of ten (10) years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee. In consideration of the premises the said lessee covenants and agrees:

"First. To deliver to the credit of lessor,

free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"Second. To pay the lessor two hundred ($200.00) dollars, each year, in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the well at his own risk and expense.

"Third. To pay lessor for gas produced from any oil well and used off the premises at the rate of fifty ($50.00) dollars per year, for the time during which such gas shall be used, said payments to be made each three months in advance.

"If no well be commenced on said land on or before the 7th day of December, 1918, this lease shall terminate as to both parties unless the lessee on or before that date, shall pay or tender to the lessor, or the lessor's credit in the Farmers' National Bank at Cross Plains, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of seventy-six and $25/100$ ($76.25) dollars which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable, as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above-described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments. * * *

"If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignments of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment, or a true copy thereof; and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above-described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental."

On January 16, 1918, Alvis and his cestui que trust transferred to C. W. Markley their rights under the above contract. On January 31, 1918, Markley transferred to L. W. Young, Jr., his rights in and to the land in the Burnlee survey. On February 7, 1918, Markley transferred to said Young his rights in and to the land in the Bass survey. Thereafter, and prior to November 11, 1918, L. W. Young, Jr., transferred to the appellant, R. M. Young, his rights in the land situate in the Burnlee survey, and by another assignment transferred to R. M. Young his rights in the land situate in the Bass survey.

On November 11, 1918, appellant, R. M. Young, made two deposits to the credit of appellee, Wm. L. Jones, in the Farmers' National Bank of Cross Plains, Tex., one deposit being for $38.25, and the other for $35.04, making a total of $73.29. The correct amount of the rental due on or before December 7, 1918, upon all of the land, under the original contract, was $76.25. On December 16, 1918, appellee Jones wrote appellant, Young, calling his attention to the fact that the correct amount of the rental had not been paid, and declared the contract thereby terminated. Thereupon appellant, on December 24, 1918, wrote Jones as follows:

"William L. Jones, Baird, Texas—Dear Sir: I acknowledge receipt of your favor of the 16th inst. with reference to oil and gas lease covering certain acreage in the U. Bass and Burnlee surveys, in Callahan county, Texas, and I wish to say immediately that this office has made a slight mistake with reference to the payment of rental becoming due December 7, 1918, and as a matter of explanation I have the following to say:

"Your lease covers in all 305.3 acres, and on February 5 of this year I purchased the lease, by assignment, in so far as same covers the 153 acres of the A. T. Burnlee survey, which acreage I am carrying under No. 11511; and on February 16 I purchased the remaining interest in this lease, being the acreage in the U. Bass survey, which through an oversight of my lease department was given No. 11756, when same should have been consolidated with the first purchase and carried under the one lease number, inasmuch as I was acquiring the entire lease. When the rental was paid, it therefore was paid with two separate drafts, and in figuring the amount of the rental due under each lease number the total amount was figured short $2.96; but this, of course, was an innocent mistake, which was not discovered until your letter of the 16th inst. was received. I expect to maintain my rights under this lease, and I wish to notify you that I am to-day mail-

ing to the Farmers' National Bank of Cross Plains, Texas, a New York draft in the sum of $2.96, being the balance of rental due you, and trust you will find it consistent to call upon them for this sum. Will you please advise me?"

In this connection the agreed facts are as follows:

"The papers concerning the acreage in question came to defendant's office in Tulsa, Oklahoma, under two separate lease numbers, one bearing the number 11511, the assignment in that case calling for 153 acres out of the Burnlee survey; the. remainder of such leased acreage came through said office about two weeks later under the number of 11756, the assignment in that case calling for 150 acres out of the U. Bass survey; the combined acreage covered by both assignments amounts to 303 acres; the rental called for by this lease was $76.25, which became due December 7, 1918, and the amount of $73.29 was paid by defendant prior to December 7, 1918, by forwarding to the Farmers' National Bank of Cross Plains, Tex., which was the depository named in the lease, two New York drafts, one in the sum of $38.25 to. cover lease No. 11511, the other in the sum of $35.04 to cover rental under lease No. 11756; the lessor was notified by defendant's office that these deposits had been made and some time after the rental was due said lessor notified defendant that he had made a mistake in the payment of the rental money and had failed to pay enough; thereupon the matter was immediately checked up in defendant's office, and it was discovered that the remittances made to said depository bank before December 7, 1918, lacked $2.96 of amounting to the sum of $76.25 called for in the lease; thereupon defendant immediately remitted said $2.96 to said depository bank and deposited same therein to the credit of the lessors in said lease and notified lessors that such had been done and that it had always been the purpose and intention of defendant to protect the lease and comply with its terms and that the failure in the first instance to remit the required amount was due solely to error and inadvertence. If the defendant had not made a mistake, he would have paid the $76.25 by December 7, 1918."

Jones at all times refused to accept the deposits made by appellant. On February 19, 1919, Jones and wife and S. N. Foster, to whom they had conveyed a portion of the land, brought this suit to cancel and set aside the lease contract, on account of appellant's failure to pay the correct amount of the rental due on or before December 7, 1918. Upon trial without a jury judgment was rendered in plaintiff's favor, canceling the lease upon the land in the Bass survey, and denied them any relief in so far as concerned the land in the Burnlee survey. From this judgment the defendant appealed.

## Opinion.

The appellant's contention is that the admitted facts as above stated, show:

"That defendant at all times intended fully to comply with all terms of the lease contract, that the trivial shortage in one of the rental remittances was the result of a mere inadvertence, and that no damage resulted to the lessor from such mistake; the case plainly called for the interposition of equity to prevent a forfeiture of the lease, and the court erred in rendering judgment canceling the. lease as to a part of the acreage covered by the same."

In determining whether this case calls for the application of the equitable rule for relief against forfeitures, it becomes necessary first to ascertain the nature of the contract executed by Jones and wife.

[1] The instrument does not undertake to grant the oil and gas in præsenti, but, upon the contrary, the lands were granted and demised "for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks," etc. Elsewhere in the contract the right of the lessee is designated as "privilege." Viewing the instrument as a whole and in the light most favorable to the lessee, it cannot be regarded as a conveyance of the oil and gas as a present interest in the land itself, but it confers upon him a mere right, franchise, or privilege to enter upon the land and "devote it to a certain use, with the usufructuary right, as a part of its [his] use and enjoyment, to appropriate a portion of the oil and gas as might be discovered." Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. In other words, the lessee was granted the privilege of entering upon the land, developing its oil and gas resources, and exploiting a portion of such resources for his benefit, as distinguished from a present vested interest in the land itself. This conclusion is supported by the discussion in the Texas Co. Case, supra, also by Oil Co. v. Teel, 95 Tex. 586, 68 S. W. 979, O'Neil v. Sun Co., 58 Tex. Civ. App. 167, 123 S. W. 172, and Witherspoon v. Staley, 156 S. W. 557.

The next feature of the contract which should be noticed is its optional character. The cash paid to the lessors when the contract was made secured to the lessee the development and exploitation privilege until December 7, 1918; but, if a well upon the land was not commenced on or before that date, the lease terminated unless the lessee, on or before that date, paid or tendered to the lessor's credit the sum of $76.25, which payment would "operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date." It will be noted the lessee assumed no obligation to commence a well in 12 months from the date of the contract, nor did he agree to pay a rental if such a well was not commenced. It was wholly optional with him. In this connection it will be noted, also, that

by the express terms of the contract, if such well was not commenced in 12 months or the rental paid, the lease was terminated as to both parties. The features of the instrument, to which attention has been thus directed, show that if a well has not been commenced in 12 months the privileges of the lessee terminated, unless he exercised his option to extend the same for the period of another year by paying $76.25 on or before December 7, 1918. The commencement of a well or payment of rental was a condition precedent to a continuation or extension of the lessee's privileges after that date. In speaking of failure to perform conditions precedent in options to purchase, Mr. Pomeroy says:

"In pursuance of this principle, equity will not relieve against a failure to perform a condition precedent in a contract, however slight the failure. The right to specific performance has never vested for the party in default. The contract cannot be said to be of equitable cognizance until the condition is performed. The contractual liabilities are incomplete before that time. * * * It has at times been suggested that relief for slight failure, where there was substantial compliance, should be applied to options to purchase land, as where the holder of the option was a day late in exercising the option. But it is clear the rule followed generally by equity is the true one—that there can be no relief against failure to exercise an option after the day named for its expiration, for an option is no more than an offer to sell, which the offerer is bound to keep open during the time set, but which expires with that time, leaving nothing for equity to operate upon. The courts very frequently refuse to give specific performance of an option sought to be exercised after the time has expired, on the ground of time being of the essence. Strictly speaking, there is no contract if the election is not made before the expiration of the time, and equity, finding no contract to use its discretion upon, cannot be concerned with the element of time, which presupposes an existing contract." Pomeroy's Eq. Remedies, §§ 806, 807.

[2, 3] In oil and gas leases time is regarded as the essence of the contract, and the rule that a lease is construed most strongly against the lessor does not apply. In oil and gas leases it is a matter of common knowledge that the development of those products is in most instances the main inducing consideration to the lessor. The privilege of paying rentals in lieu of such development is for the benefit of the lessee. The vagrant nature of oil and gas is well known, and undue delay in prospecting therefor often produces a serious loss to the landowner.

[4] We are therefore of the opinion that the contract executed by Jones and wife did not vest in the lessee a present interest or estate in the land itself, which would render applicable the equitable rule for relief against forfeiture of a vested interest, for breach of a condition subsequent, but that the right or privilege of the lessee terminated on December 7, 1918, unless a well was commenced on or before that date, or the stipulated rental paid; that the commencement of the well or payment of the rental were conditions precedent to an extension or continuation of the lessee's privileges and wholly optional with him; and, this being the nature of the contract equity will not relieve against the failure to exercise the option in strict accordance with its terms. Oil Co. v. Teel, O'Neil v. Sun Co., and Witherspoon v. Staley, all supra; Weiss v. Claborn, 219 S. W. 884; Hitson v. Gilman, 220 S. W. 140; Jennings-Heywood Oil Syndicate v. Oil Co., 119 La. 793, 44 South. 504; Pomeroy's Eq. Remedies, §§ 806, 807. Upon this view the court below did not err in canceling the lease upon the land in the Bass survey.

The appellee cross-assigns error to the action of the court in refusing to cancel the lease upon the land in the Burnlee survey. No conclusions of law were filed by the trial court, but we presume its action in this particular was based upon the theory that the contract was divisible, and the deposit of $38.25, which was made by appellant to cover the acreage in the Burnlee survey protected and maintained his rights and privileges as to that land. The contract provides:

"If the estate of either party hereto is assigned—and the privilege of assigning in whole as in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns; * * * and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above-described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental."

It doubtless was not contemplated that the original lessee, nor any subsequent assignee of the entire lease, should have the right to pay less than the whole rental sum of $76.25 annually for the continuation of his privileges. The manifest purpose of the provision was to give different assignees of different portions of the land the right to protect their respective holdings. The fair and reasonable construction of this portion of the contract is that the option to pay rental upon only a portion of the land arose when the lessee had assigned to different persons different portions of the land in severalty. In such case each assignee would have the right to pay the pro rata rental upon the land as-

signed · to him and protect against an extinguishment of his privileges.

[5] We are of the opinion that under the contract in question, where all of the rights and privileges granted by the instrument as to all of the lands described therein were vested in one person, the optional right to pay rental was indivisible, and that such an individual would have no right to pay rental upon a part of the land only. This was the construction placed upon the instrument by the lessor, for he at once declared the entire lease terminated for the failure to pay the whole rental. The appellant seems also to have placed this construction upon the contract, for in his letter to Jones of December 24th, he says:

"Your lease covers in all 305.3 acres, and on February 5 of this year I purchased the lease, by assignment, in so far as same covers the 153 acres of the A. T. Burnlee survey, which acreage I am carrying under No. 11511; and on February 18 I purchased the remaining interest in this lease, being the acreage in the U. Bass survey, which through an oversight of my lease department was given No. 11756, *when same should have been consolidated with the first purchase and carried under the one lease number, inasmuch as I was acquiring the entire lease.*" (Italics ours.)

[6] The interpretation placed upon a contract by the parties thereto, where the meaning is uncertain, is to be considered by the court in construing the same. We are therefore of the opinion that, since the entire interest of the lessee was vested in appellant, the option to pay the annual rental was indivisible, and the failure to pay the whole stipulated amount terminated the entire contract. For this reason appellees' cross-assignment is sustained.

Affirmed as to the land in the Bass survey. As to the land in the Burnlee survey the judgment is reversed, and here rendered in appellee's favor.