## HUMBLE OIL & REFINING CO. et al. v. HARRISON.

### No. 11824.

Court of Civil Appeals of Texas. Galveston.

Jan. 16, 1947.

Rehearing Denied Feb. 27, 1947.

Andrews, Kurth, Campbell & Bradley, of Houston, for appellant Union National Bank of Houston, guardian of Pierce Withers' estate.

W. C. Hock, of Fort Worth, for appellant Danciger Oil & Refining Co.

R. E. Seagler and Robt. F. Higgins, both of Houston, for appellants Humble Oil & Refining Co. and T. J. Hudgins.

Rex G. Baker, of Houston, of counsel, appellants.

Fouts, Amerman & Moore and H. G. Dunlap, all of Houston (Joseph W. Moore and H. G. Dunlap, both of Houston, of counsel), for appellee.

MONTEITH, Chief Justice.

This suit was brought by appellants, Humble Oil & Refining Company, Danciger Oil & Refining Company, and others against appellee, D. J. Harrison, for removal of cloud from and to quiet the title of appellants to certain oil and gas interests held by them in two tracts of respectively 874.4 and 200 acres of land out of the Shipman and Charles League Survey in Brazoria County, Texas, and for judgment against appellee continuing certain leases on said land in full force and effect.

In a trial before the court judgment was rendered denying appellants, Humble Oil & Refining Company and Danciger Oil

& Refining Company, all relief sought by them and decreeing that the leases sought to be kept alive be terminated. All other parties defendant were dismissed in the judgment rendered. No findings of fact or conclusions of law were requested by the parties or filed by the trial court.

The parties to this suit acquired the interests involved in the suit by the following chain of title:

By instrument dated March 19, 1928, Mrs. Maud S. Paddock and her husband, W. C. Paddock, conveyed to Henry Banker the two tracts of land involved herein, aggregating 1074.4 acres, reserving an undivided one-fourth interest in the oil, gas and other minerals in and under said land. This deed provided that the grantee, his heirs and assigns, should have full authority to make mineral leases on all of said land and that the grantors, the Paddocks, should receive one-fourth of the consideration for subsequent leases made, and one-fourth of the rentals and royalties provided for thereunder, and their proportion thereof should be paid directly to the Paddocks.

By deed dated April 24, 1928, Henry Banker conveyed said two tracts of land to Mrs. Lottie Otto as her separate property, and by instrument dated November 8, 1932, Mrs. Lottie Otto and her husband leased said 874.4 acre tract to Pierce Withers for a period terminating on November 8, 1933.

Later, by instrument dated December 24, 1932, the Ottos and the Paddocks executed another mineral lease of said 874 acre tract to Pierce Withers for a period terminating November 2, 1933. This instrument recites that it is given and accepted in lieu of and to take the place of and in confirmation and ratification of the lease of said tract of land executed by Mrs. Lottie Otto and her husband dated November 8, 1932. It provides for extension thereof by the payment of $2.50 per acre for all of said land for each six months the lease was sought to be extended. This lease contained the same conditions as to the payment of rentals as the lease of November 8, 1932, but provided that three-fourths of rental payments due thereunder should be paid

to Lottie Otto and that one-fourth thereof should be paid to Mrs. Maud Paddock.

By instrument dated June 7, 1937, Mrs. Lottie Otto and her husband extended their interest in this lease until May 8, 1938, and by instrument dated June 27, 1938, Mrs. Maud Paddock and her husband leased to Humble Oil & Refining Company an undivided one-fourth of the mineral interest in said two tracts of land for a term of five years.

By instrument dated October 24, 1935, Pierce Withers assigned all interest acquired by him in said 874.4 acre tract of land under these leases to Humble Oil & Refining Company, retaining an override or oil payment therein.

Humble Oil & Refining Company assigned half of the interest it acquired from Pierce Withers to Danciger Oil & Refining Company subject to the oil payments held by him.

By instrument dated February 20, 1939, Mrs. Lottie Otto and her husband leased an undivided three-fourths interest of said 200 acre tract, "estimated to comprise 150 acres," to Humble Oil & Refining Company for a primary term of from March 1, 1939, to March 1, 1944. This lease was afterwards extended to March 1, 1949. It provided for termination if drilling operations were not commenced on or before a year, or unless lessee paid or tendered to lessor the sum of $750 for the privilege of deferring the commencement of drilling operations for a period of twelve months, and that, upon like payments, the commencement of drilling might be further deferred for successive periods of twelve months each during the terms of the lease.

By deed dated February 8, 1944, Mrs. Lottie Otto and her husband conveyed to D. J. Harrison an undivided interest in and to the oil, gas and other minerals in and under said 1074.4 acres of land subject to oil leases owned by Humble Oil & Refining Company.

The deed contained the following recitation:

"*In the above described tract of land the grantors own three-fourths (¾) of the minerals and are hereby conveying two-*

*thirds* (⅔) *of their said three-fourths of the minerals, or an undivided one-half of said minerals.* (Emphasis ours.) Said land being now under oil and gas leases from Grantors and of record in the Deed Records of Brazoria County, Texas, and owned by Humble Oil & Refining Company, it is understood and agreed that this sale is made subject to the terms of said leases and/or any other leases from Grantors now valid and now of record in the Deed Records of Brazoria County, Texas, covering same, but covers and includes one-half (½) of all the oil royalty, gas royalty, and royalties on other minerals due and to be paid under the terms of said lease or leases in so far as they cover the above described land.

*"It is understood and agreed that one-half (½) of the money rentals, which may be paid, on the above described land, to extend the term within which a well may be begun under the terms of said leases is to be paid to the said Grantee;* (Emphasis ours) and, in event that the above described leases for any reason become canceled or forfeited, then in that event, Grantee shall own one-half (½) of all oil, gas, and other minerals in and under said lands, together with a like one-half (½) interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described land."

Under the above chain of title Mrs. Lottie Otto acquired title to the surface and an undivided three-fourths interest in the minerals, oil and gas in the two tracts of land of respectively 874.4 and 200 acres of land involved in this suit, and Mrs. Maud Paddock retained an undivided one-fourth interest in such minerals. D. J. Harrison acquired from Mr. and Mrs. Otto an undivided two-thirds of Mrs. Otto's three-fourths mineral interests in said two tracts of land, including the rentals due thereon under leases held by appellants, Humble Oil & Refining Company and Danciger Oil & Refining Company.

Appellee contends in his pleadings and under counter-points on appeal that Mrs. Lottie Otto and M. C. Otto acted under the power of attorney granted in the deed from Mrs. Maud Paddock and W. C. Paddock to Henry Banker in executing the two oil leases under which appellants claim title to the mineral interests in said two tracts of land. It is apparent, we think, from a careful analysis of said leases, including the leases of said 874.4 acre tract by the Ottos of November 8, 1932, and from the Ottos and the Paddocks of December 24, 1932, which was executed in lieu of and as a confirmation therof, and the lease by Mrs. Lottie Otto and M. C. Otto of said 200 acres of land to Humble Oil & Refining Company, that Mrs. Lottie Otto and M. C. Otto intended to lease only their three-fourths interest in said two tracts of land.

It was stipulated by the parties that both a photostatic copy and a certified copy of the deed from Mrs. Lottie Otto and her husband to appellee were sent to Humble Oil & Refining Company prior to the rental paying dates provided for in the leases of both of said tracts of land, and that the Humble Company was notified by registered mail that appellee had purchased one-half of the minerals, rentals and royalties in and under said 1074.4 acres of land. By letter dated February 18, 1944, Humble Oil & Refining Company advised appellee that it had received said letter and a copy of said instrument and that its records had been amended in accordance with this agreement.

On February 23, 1944, Humble Oil & Refining Company, for itself and on behalf of Danciger Oil & Refining Company, caused to be deposited to the credit of appellee in the First State Bank of Needville, Texas, the depository named in its lease, the sum of $375, which it construed to be the amount of the rentals due appellee under its lease of said 200 acres, and on April 28, 1944, it caused to be deposited in said depository bank to appellee's credit the sum of $819, which it construed to be the amount of rentals due under its lease of said 874.4 acres of land under the terms of the lease under which it held title thereto.

Both of these payments were made prior to the rental paying dates provided for in said leases. Appellee refused to accept

said payments as the rentals due him and so notified both the First State Bank of Needville and Humble Oil & Refining Company by registered mail. After the date for paying the rentals under the terms of said leases had expired, Humble Oil & Refining Company caused to be deposited to appellee's credit in the named depository the sums of $1093 and $500 as the rentals due on said two tracts of land. These payments were refused by appellee by registered letters to both the bank and to Humble Oil & Refining Company in which he declined to accept or avail himself of said rental payments.

Appellants contend that appellee did not acquire a one-half interest in the rentals due under the leases held by appellants under the deed from Mrs. Lottie Otto and her husband to him, but that he acquired thereunder only one-half of the three-fourths interest of Mrs. Lottie Otto therein and that appellants had paid appellee all of the rentals due him. This contention cannot, we think, be sustained.

The deed in question, in clear and unmistakable terms, conveyed to appellee a one-half undivided interest in the oil, gas and other minerals, including the rentals payable by appellants to the grantors in the leases on said land under which they claimed, in and under said two tracts of land. It expressly recited that the grantors therein owned three-fourths of the mineral interests therein and that they thereby conveyed to appellee two-thirds of their three-fourths interest therein. Under the record presented Mrs. Otto owned a greater interest in said minerals and rentals than the one-half interest conveyed to appellee, and he acquired a one-half interest therein.

As to the amount of the rentals due appellee under the leases of said 874.4 acre tract of land under which appellants held, it is undisputed that the lease from the Ottos and the Paddocks to Pierce Withers dated December 24, 1932, provided that it could be maintained in force for six months periods by the payment by grantees of $2.50 per acre for all of the land, a total of $2186, one-half of which, the sum of $1093, was payable to appellee under the terms of the Otto deed. Appellants de-posited to appellee's credit the sum of $819.75, which he declined to accept as the amount of rentals due him.

As to the amount of rentals due appellee under the leases held by appellants on said 200 acre tract; The lease from Mrs. Lottie Otto and her husband dated February 20, 1939, and leasing Humble Oil & Refining Company a three-fourths interest of 150 acres in said 200 acre tract, provides for the payment of $750 for the privilege of deferring drilling operations as to said three-fourths interest for a period of six months. Two thirds of three fourths of this amount, the sum of $500, was payable to appellee under the Otto deed. Appellants deposited to his credit the sum of $375, which he declined to accept as the amount of said rentals due him.

This case was tried before the court without a jury and since no findings of fact were requested by the parties or found by the trial court, all disputed issues of fact raised by the testimony, including the question as to whether appellee complied with the provisions of said leases with respect to giving notice to appellants of assignments affecting rentals, must be presumed to have been resolved by the trial court in support of the judgment rendered. Machicek v. Renger, Tex.Civ. App., 185 S.W.2d 486, error refused; Trigg v. Fambro, Tex.Civ.App., 184 S.W.2d 666; Prichard v. Farmers Co-Op., Tex.Civ.App., 183 S.W.2d 240; 3 Tex.Jur. 507.

It is, we think, well settled in this state that in construing oil and gas leases similar to those under which appellants held which provide for termination thereof on or before a certain date unless the lessee shall, on or before that date, pay or tender to lessor a certain sum of money, which payment shall operate as a rental and cover the privilege of deferring the commencement of a well for a stated period of time, the courts of this state have uniformly held that the lessee has neither assumed an obligation to commence a well within that period of time nor that he has agreed to pay a rental thereon if such well is not commenced within the primary term of the lease. In this character of contracts it is held that time must be re-

garded as the essence of the contract, for the reason that the vagrant nature of oil and gas and the fact that undue delay in the prospecting therefor often results in serious loss to the owner and that therefore the privilege of paying rental in lieu of such development is for the benefit of lessee. In this type of contracts the rule that the lease is to be construed most strongly against the grantor does not apply. Young v. Jones, Tex.Civ.App., 222 S.W. 691; Appling v. Morrison, Tex.Civ. App., 227 S.W. 708.

The case of Empire Gas & Fuel Co. v. Saunders, 5 Cir., 22 F.2d 733, 735, involves the precise question presented in this appeal under a parallel state of facts. The suit was brought to cancel an oil and gas lease which provided, among other things, that if operations for the drilling of an oil and gas well were not begun on said land on or before a certain date the lease would terminate unless the lessee on or before that date should pay or tender to the lessor or deposit to his credit a sum specified in the lease which would operate to confer on the lessee the privilege of deferring the commencement of such well for six months from said date. No wells were drilled but the lessee paid the rental or delay money up to June 26, 1924. On November 24, 1924, lessee's assignee sent lessor a check for the sum of $16 instead of the sum of $32, due under the lease. Lessor declined to accept this payment and notified lessee that the lease was at an end because of the failure to pay the full amount of rent on the date it was due. The court in its opinion said:

"In Gillespie v. Bobo, [5 Cir.,] 271 F. 641, this court held that the same form of lease as is here involved granted a mere option to the lessee, and that, on failure to exercise that option by drilling wells or paying rentals when due, the lease terminated, not by forfeiture, but in accordance with its provisions. It is conceded that this decision correctly interpreted the rule of property in force at that time under the Texas decisions * * *. The lease here involved, whether it be a mere option or an estate, by its very terms ceases to exist upon the happening of either of two events, namely, failure to drill wells or failure to pay rent. We understand that to be the ruling of the Supreme Court of Texas in a decision rendered since our decision in Gillespie v. Bobo, supra. Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601. See, also, Caruthers v. Leonard, [Tex.Com.App.,] 254 S.W. 779, a decision by the Commission of Appeals, approved by the Supreme Court.

"In accordance with what was said in Gillespie v. Bobo, we repeat that in our opinion the equitable rule as to relieving against forfeiture has no application to the facts of this case, for there was no forfeiture; there was nothing to be forfeited, because the lease by its very terms had ceased to exist.

"The lease under consideration provides that, if drilling is not begun within one year from its date, the rights of the lessee shall terminate, unless the lessee keeps it alive by making the payments of rent. It makes time the essence of the contract. The lessee is not obligated to do anything, but, if it fails either to drill wells or to make the payments of rent as and when due, its rights and privileges are at an end. The lessor was under no duty to notify the lessee of a failure to pay the correct amount due as rent, and had the right to remain silent."

■ Under above authorities, we think that appellee was authorized to decline to accept additional rentals and to declare said leases terminated upon appellants' failure to pay the correct amount of rentals when due.

The judgment of the trial court is in all things affirmed.

Affirmed.