**PHILLIPS PETROLEUM COMPANY,**
Appellant,

v.

**John Henry HARNLY et al., Appellees.**

No. 7068.

Court of Civil Appeals of Texas.

Amarillo.

July 3, 1961.

Rehearing Denied Sept. 5, 1961.

Simpson, Adkins, Fullingim & Hankins, C. J. Roberts and John R. Rebman, Amarillo, Smith, Teed, Wade & Waters, Pampa, R. L. Foster and Wm. J. Zeman, Bartlesville, Okl., for appellant.

Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, for appellees.

DENTON, Chief Justice.

This is an action brought by appellees as lessors and mineral owners, to cancel and terminate certain oil and gas leases held by appellant on a half-section of land in Gray County, Texas. Both appellant and appellees filed motions for summary judgment. The trial court severed the phase of the case on appeal before us dealing with shut-in rental payments from the remainder of the case involving a purported consolidation of the leases in question and a lease covering the E ½ of the same section. The trial court granted lessors' motion for summary judgment and in so doing rendered judgment that Phillips' oil and gas lease from appellees had terminated.

The primary question presented here is whether the lessors' shut-in rental payments tendered after a well was capable of producing gas in paying quantities had been capped after producing gas some four months were sufficient to extend the term of the oil and gas leases beyond the primary term.

On November 7, 1951, Sarah W. Harnly, a feme sole, and her three children, John Henry Harnly, Paul Witmore Harnly and Mary Elizabeth Harnly Aroniss, each joined by their respective spouses, ex-

ecuted oil and gas leases to Phillips for a primary term of five years. Separate leases were executed by each of the named lessors on the NW ¼ and the SW ¼ of Sec. 109. However, a subsequent instrument was executed which agreed the leases covering the NW ¼ should be treated as one lease, and the leases covering the SW ¼ should be treated as one lease. Delay rentals were tendered and accepted on the NW ¼ on each anniversary date including the 1955 anniversary date. Phillips timely paid delay rentals which were accepted by the lessors on the SW ¼ each year until the anniversary date of 1955. A well was commenced in July of 1955 on this tract and drilling operations were continued until March, 1956, when the well was completed as a producer of gas with an open flow potential of 110 million cubic feet per day, with some condensate. Gas from this well was produced and marketed from April until July of 1956. The well was capped on or about July 30, 1956 for the lack of a market. Prior to the end of the primary term on November 9, 1956, Phillips tendered shut-in rental payments to the lessors, but these payments were rejected and refused by all lessors except Mr. and Mrs. Aroniss, who failed to receive the tendered rentals before the expiration of the primary term due to the payment being mailed to her former address. This latter phase of the case will be discussed later in the opinion.

This suit was filed in August, 1957 by the lessors seeking to have the court terminate the oil and gas leases and for an accounting for money due for production from the gas well. The trial court granted the lessors' motion for summary judgment and denied Phillips' motion. All parties agree that there are no material issues of fact to be determined in the phase of the case presently before us dealing with the shut-in rental payments.

■ We shall first consider appellees' first two points in which they complain that the appellant has failed to bring forward a complete record of the matters considered by the trial court in granting the summary judgment, and that therefore the trial court's judgment should be affirmed. They contend the record is not properly authenticated; that it does not include a statement of facts or admissions, arguments of counsel, and all depositions which were before the trial court. This court granted appellant's request to file a supplemental transcript under Rule 428, Texas Rules of Civil Procedure. The clerk of the trial court was thus ordered to bring forward all items in the supplemental transcript that were not included in the original transcript. This order was duly complied with. There is no statement of facts, but the record including a certificate of the trial judge, reveals that no testimony was taken. We are of the opinion the record before this court is complete and is properly authenticated. There being no indication that there was any evidence or filed instruments or exhibits before the trial court and considered by him which were not brought forward in the record, no presumptions are to be applied in favor of the summary judgment on the basis of an incomplete record or of the absence of a statement of facts. Toliver v. Bergmann, Tex.Civ.App., 297 S.W.2d 208 (no writ history); Box v. Bates, Tex., 346 S.W.2d 317. We therefore overrule appellees' points Nos. 1 and 2.

We next consider whether or not Phillips' tender of the shut-in rentals was sufficient to extend the oil and gas leases in question beyond the primary term. The pertinent parts of the material paragraphs of the identical leases read as follows:

"4. If operations for drilling are not commenced on said land on or before the 9th day of November, 1952, the lease shall then terminate as to both parties unless on or before such date Lessee shall pay or tender to Lessor or to the credit of Lessor in the Peoples State Bank at McPherson, Kansas (which bank and its successors shall continue as the depository

for all rentals payable hereunder regardless of changes in ownership of said land or of the rentals) the sum of One Hundred Sixty and No/100 Dollars ($160.00) (herein called rentals), which shall cover the privilege of deferring commencement of operations for drilling for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of operations for drilling may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rentals may be made by the check or draft of Lessee mailed or delivered to Lessor or to said bank or its successor on or before such date. * * *

"9. If for any period or periods of time after discovery of oil, gas or other mineral, no oil, gas or other mineral is produced from the leased premises but there is located thereon a gas well, a bradenhead well, or a condensate or a distillate well, from which the gas is not sold or used off the premises or in the manufacture of gasoline or other products, or there is located on said premises an oil well which is not produced on account of any of the causes stated in Paragraph 8 hereof, it shall be deemed, nevertheless, that oil or gas is being produced from the leased premises for the purpose of continuing this lease in effect as long as there remain upon the leased premises one or more wells capable *or* producing oil or gas, if Lessee shall commence or resume the payment of rentals (whether during or subsequent to the primary term hereof) in like amount and in like manner as is provided in Paragraph 4 hereof, and continue the payment of such rentals annually until production of oil, gas or other mineral is commenced or resumed, or this lease is surrendered; provided that the first rental under the provisions of this paragraph shall be payable on or before the anniversary of the rental paying date of this lease next ensuing after the expiration of sixty (60) days from cessation of all production on the leased premises, or from date of completion of a well which is not produced where there is no other production on the leased lands, and subsequent rentals shall be payable annually thereafter.

"11. If oil, gas or other mineral shall be discovered on the leased premises and if, in the judgment of Lessee, it shall become unprofitable or uneconomical to produce the same due to the low price obtainable for such products or due to the restricted allowable production under the laws of the state in which the land is situated, under any federal law, or under the orders or regulations of the appropriate governing bodies, and, if, in the judgment of Lessee, such unprofitable or uneconomical conditions are temporary, then Lessee may shut in and cease producing during the existence of such unprofitable or uneconomical conditions, for a period not in excess of two (2) years, during which time it shall be deemed that oil or gas is being produced and this lease shall continue in effect, if Lessee shall pay to Lessor annually during such period rentals in like amount and in like manner as provided in Paragraph 9 hereof. Nothing herein contained shall be construed to require the payment of rentals covering the same period for which rentals are paid under the provisions of Paragraph 9."

Although all parties seem to agree there is no ambiguity in the provisions of the lease, their respective interpretations of the particular paragraphs of the lease reach a different conclusion. The fact two different conclusions are reached in an interpretation of a lease by opposing parties to the instrument does not in itself render the contract ambiguous. In our

opinion, the provisions of the lease contracts are unambiguous. We must therefore look to the lease itself to determine the intentions of the parties. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341; Superior Oil Co. v. Stanolind Oil & Gas Co., 150 Tex. 317, 240 S.W.2d 281; 31-A Tex. Jur. 179, Oil and Gas, Sec. 109.

Appellant contends it complied with all provisions of the leases and in so doing perpetuated the leases beyond the end of the primary term. On the other hand, appellees take the position that the trial court correctly declared the leases terminated for several reasons: (a) that appellant, though timely making the tender, placed an improper period to be covered by the shut-in payment; (b) that the tenders were not "checks or drafts" within the meaning of the leases; (c) that the tenders were conditional and therefore not being in conformance with the contract could not prevent the termination of the leases; (d) that the Aroniss' leases terminated because the shut-in rentals were not delivered to those lessors before the 1956 anniversary date.

The primary question presented here is the determination of the period covered by the shut-in rental payment. Phillips contends the period covered extended from November 9, 1956 to November 9, 1957 (the anniversary paying dates of the lease) and annually thereafter conditioned on the payment of the shut-in rentals or production. They originally took this position by typing the following statement on each of the shut-in payments tendered in November, 1956: "Payment in full for your proportionate part of shut-in gas well payment covering the period from November 9, 1956 to November 9, 1957." These tenders were refused by the lessors who contend the correct period to be covered by the shut-in rentals was from July, 1956 to July, 1957. We are not confronted with the question of whether or not the shut-in rentals were timely tendered as was the question presented in Gulf Oil Corp. v. Reid, Tex., 337 S.W.2d 267; Freeman v. Magnolia Petroleum Co., 141 Tex. 274, 171 S.W.2d 339. It

is to be further noted that the wording of the "shut-in" paragraphs involved in these two cases differs in several material respects from the shut-in clauses in the instant leases. We therefore conclude the Gulf and Freeman cases are not controlling here. In the present case it is agreed the shut-in payments were timely tendered, and were for the correct amount.

Contrary to appellees' contention here, we are of the opinion paragraph 11 of the leases has no application to the facts before us. That paragraph deals with the payment of the "rentals" in the event oil and gas is discovered and production "* * * shall become unprofitable or uneconomical to produce due to the low price obtainable for such products or due to the restricted allowable production under the law of the state in which the land is situated * * *." Neither contingency existed in this case. Here it is clear the well was shut in because of the lack of a market. Price of the gas or a restricted allowable did not enter into the decision to cap the well. We must therefore look to paragraphs 4 and 9 to determine the intention of the parties.

All payments which the lessee has an option to pay under this lease are governed either directly or indirectly by paragraph 4 (the delay rental provision). Both paragraphs 9 and 11 refer to paragraph 4 in determining the amount and manner of paying the rentals. Paragraph 4 being the usual "unless" delay rental clause, provides for an anniversary date for paying rentals on or before November 9 of each year of the primary lease. Paragraph 9 when applicable provides that: "Lessee shall commence or resume the payment of rentals (whether during or subsequent to the primary term hereof) in like amount and in like manner as is provided in Paragraph 4 hereof * * *." Delay rentals under paragraph 4 were payable "annually" and such annual payment "* * * shall cover the privilege of deferring commencement of operations for drilling for a period of twelve (12) months * * *." The word "annual-

ly" means yearly or once a year, however the word itself does not signify what time in a year. Thomas v. Groebl, 147 Tex. 70, 212 S.W.2d 625. We therefore are of the opinion that the clear intention of the parties as expressed in paragraphs 4 and 9 is that the lessee is required to make a tender of shut-in rentals only once each year or every twelve months. The language of paragraph 9 makes the first shut-in rental due on or before November 9, 1956, as this was the first anniversary of the rental paying date, " * * * next ensuing after the expiration of sixty (60) days from cessation of all production on the leased premises * * *." Cessation of all production occurred on July 30, 1956. As the 60-day period from the time the well was shut in ended September 28, 1956, the November anniversary date was the due date of the first shut-in rental payment. This requirement was complied with when Phillips made the tenders prior to November 9, 1956.

■ The leases were in full force and effect on November 9, 1955, the fourth anniversary date of the leases. Phillips paid delay rentals on the NW¼ for the period November 9, 1955 to November 9, 1956. On this same 1955 anniversary date, Phillips was engaged in drilling operations on the SW¼. This operation resulted in the producing gas well above referred to. The commencement of the well on the SW¼ during the primary period and prior to the anniversary date, and continuing without interruption beyond such date was done in lieu of paying delay rentals for the last year of the lease. It therefore follows that the leases covering both quarter sections were thereby extended to the end of the primary term—November 9, 1956. Whelan v. Shell Oil Co., Tex.Civ.App., 212 S.W.2d 991 (error refused).

■ If we be correct in the conclusion that the leases remained in full force and effect until the end of the primary term on November 9, 1956, we must next determine whether or not the shut-in rentals were conditionally tendered. In other words, this leads us to the basic question to be decided here—was the effective lease extension period one year from the date of shut-in (July 30, 1956) or from the anniversary date of the lease (November 9, 1956)? If it is the former period, Phillips' tender was conditional and the leases were in fact terminated at the end of the primary term when the tenders were rejected by lessors. No case has been cited, and we have found none which has passed on this exact question.

Being of the opinion the lease contract is unambiguous, we must therefore look to the material paragraphs of the lease to determine the intention of the parties. Under paragraphs 4 and 9 both delay rentals and so-called "shut-in rentals" were to be made "annually." That the first shut-in rental payments were timely tendered in November, 1956 is conceded.

The last clause of paragraph 9 reads as follows: " * * * and subsequent rentals shall be payable *annually thereafter.*" (Emphasis added.) "Annually thereafter" refers back to the "anniversary of the rental paying date of this lease next ensuing after the expiration of sixty (60) days * * *" rather than " * * * from cessation of all production on the leased premises * * *." If the shut-in payments are to be due and payable annually on or before the anniversary date of the lease in order to continue the lease in effect after the primary term, it follows Phillips complied with the provisions of the lease and thereby perpetuated the leases beyond the end of the primary term. To hold the language of the lease provided for shut-in rentals to be payable annually on or before November 9 of each year to cover an annual period from July to July would be a strained and unnatural construction. We therefore conclude the trial court erred in holding the leases terminated because of the improper period of time to be covered by the rental payment tenders.

The leases provided that the payment or tender of rentals may be made by the

"check or draft" of lessee. The rentals tendered in November, 1956 as well as the delay rentals tendered and accepted by the lessors in the four previous years, were directed "To the Treasurer of Phillips Petroleum Company" and ordered "Pay to the order of" the individual lessors their proportionate share of the shut-in rentals. Each instrument was signed "Phillips Petroleum Company Rental Account. B. F. Stradley Treasurer." Each instrument further contained the notation: "Through First National Bank in Bartlesville, Bartlesville, Oklahoma." Appellees contend these instruments were not in compliance with the leases in that the instruments tendered were neither checks nor drafts. They urge that in as much as the drawer and the drawee are the same person, the instrument is not a draft. We are unable to agree with this contention.

■■ A draft is a common term for a bill of exchange. Black's Law Dictionary, 4th Edition, 1951. The Negotiable Instruments Act, Art. 5939 et seq., Sec. 126, V.A.C.S., defines a bill of exchange as follows: "A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer." As Phillips was both the drawer and drawee, Art. 5940, Sec. 130 is also material here. That section provides: "Where in a bill drawer and drawee are the same person * * * the holder may treat the instrument, at his option, either as a bill of exchange or a promissory note." Section 191 of Art. 5948 provides that: " 'Bill' means bill of exchange * * *". We therefore conclude the payments tendered were bills of exchange under the terms of Sections 126 and 130 and as such were in compliance with the lease contract. The fact lessees have an option to treat the instrument as a bill of exchange or a promissory note can not change the character or nature of the instrument itself.

Appellant's third point of error complains of the trial court's holding, if it did so hold, the leases terminated because the tender of the rentals contained an improper condition which, if accepted by lessees, would have constituted ratification of the consolidation provision of the leases. The record before use clearly indicates the trial court took no action on the issue of consolidation other than to sever it from the shut-in rental issue before us on this appeal. The effect of such acceptance is related to the consolidation issue. We are therefore of the opinion this question is not now properly before us. Whether or not the acceptance of the tendered shut-in rentals constituted a ratification of the consolidation section of the lease can only be determined in connection with the consolidation issue of this case.

The November, 1956 shut-in payment tendered to lessor Mary Elizabeth Harnly Aroniss was mailed to her at 3050 Edwin Avenue, Apartment 3-C, Fort Lee, New Jersey. This was her address as designated in the oil and gas lease executed on November 7, 1951. The payment was returned undelivered to Phillips, marked "Out of Directory." The record reveals Mrs. Aroniss moved in July, 1952 from this New Jersey address to an apartment at 2 Fifth Avenue, New York City, New York. It is undisputed that this payment was not received by Mrs. Aroniss before the expiration of the primary term.

In her affidavit attached to her motion for summary judgment, Mrs. Aroniss stated she "believes" she notified Phillips of her change of address. On the other hand, an affidavit of a Phillips employee in charge of making constructive production payments stated positively that no such change of address notice was received by the company. In the state of the record, we conclude that no such notice was received by Phillips.

Thus the question presented is whether the shut-in rental tendered by Phillips to Mrs. Aroniss was sufficiently addressed to

comply with the terms of the lease. The previous annual delay rental payments had been mailed by Phillips to the Peoples State Bank in McPherson, Kansas, as they were authorized to do under the terms of the lease. However, Phillips elected to mail these shut-in rental payments directly to the individual lessors which they were also authorized to do under the terms of the leases.

No case has been cited nor have we found one which presents the exact situation involved here. Gillespie v. Bobo, 5 Cir., 271 F. 641, involved the mailing of delay rentals addressed to the lessor at Box 43, Forth Worth, Texas, rather than Box 43-A, Fort Worth, Texas. The letter A designated a rural route and the city post office boxes were designated by numbers only. The court there held the lease terminated because of lessee's failure to comply strictly with the terms of the lease. This case is distinguished from the instant case in several respects. In the Gillespie case, the address of the lessor was not inserted in the lease and lessee sought the address from a third party. Lessor's address was correctly given to lessee, but either by mistake or accident the letter A was omitted from the address when the envelope was being prepared for mailing.

In the instant case the lessee used the address appearing in the leases executed by the parties. The address used was correct up until the time she moved. The record reveals no notice of a change of address was ever transmitted or received by Phillips. Where lessor's address is placed in the lease, we think it would be an undue burden on lessee to ascertain the correct current address of the lessors at its peril each time a payment became due. The lessee had a right to rely on the address found in the lease in the absence of a notice of a change of such address. It is well settled in this State that the lessee under "unless" leases has a determinable fee, and that if he fails to drill or pay rentals when due his lease is terminated. The application of this rule has been relaxed in some cases. Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355; Hamilton v. Baker, 147 Tex. 240, 214 S.W.2d 460; Mitchell v. Simms, Tex.Com.App., 63 S.W.2d 371. We are of the opinion the facts of this case bring it within this rule laid down in those cases cited above.

It is to be noted the lessee simultaneously mailed individual shut-in rentals to the other original lessors to their addresses set out in the leases. In our opinion, the lessee complied with the terms of the lease when it mailed the shut-in rental payment to Mrs. Aroniss to the New Jersey address, in the absence of a notice to the contrary. Although we do not think it becomes necessary to our decision, we think it was incumbent upon Mrs. Aroniss to notify Phillips of her change of address. By her failure to do so she is estopped to now assert that the lease is terminated as to her interests on the ground the lessee failed to mail her shut-in rental to her new address. Humble Oil & Refining Co. v. Harrison, supra; Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582.

Other points urged by appellant have been considered, but in view of our rulings on the matters previously discussed, we deem it unnecessary to pass on the remaining points.

For the foregoing reasons the judgment of the trial court is reversed, and judgment is here rendered that appellees take nothing.

Reversed and rendered.