**YELLOW CHECKER CAB COMPANY OF AUSTIN, INC., Appellant,**

v.

**Randy NILHAS, Appellee.**

**No. 14502.**

Court of Appeals of Texas, Austin.

May 28, 1986.

Terral Smith, Austin, for appellant.

Stephen G. Nagle, Austin, for appellee.

Before SHANNON, C.J., and EARL W. SMITH (not participating) and GAMMAGE, JJ.

PER CURIAM.

On April 23, 1986, this Court dismissed this appeal for want of prosecution, the appellant having failed to timely file its brief. Tex.R.Civ.P.Ann. 414(k) (1985). Appellee, Randy Nilhas, by his motion for rehearing, moves the Court to set aside the order of dismissal so that he may file his brief asserting error by cross-point regarding the computation of prejudgment interest. Appellee claims that he intended to assert the cross-point in his brief, but that he never filed the brief because the deadline for filing appellee's brief never began to run since appellant did not file a brief.

Texas R.Civ.P.Ann. 414(*l*) (1985), provides:

(1) Appellee's Filing Dates. Appellee shall file his brief within twenty-five days after the filing of appellant's brief. *When appellant has failed to file his brief as provided in this rule, the appellee may, prior to the call of the case, file his brief,* which the court may in its discretion regard as a correct presentation of the case, and upon which it may, in its discretion, affirm the judgment of the court below without examining the record.

(Emphasis added.)

This rule provides that if an appellant fails to file its brief, the appellee may nonetheless file its brief "prior to the call of the case."

We conclude that appellee Nilhas failed to file his brief prior to the call of the case which occurred when this Court, on its own motion, dismissed the appeal for want of prosecution. We ordered the appeal dismissed more than one month after the deadline for filing appellant's brief had passed, and Nilhas, in the exercise of reasonable diligence, should have filed his brief asserting the cross-point during that period of time.

Appellee's motion for rehearing is overruled.

**AMBER OIL AND GAS COMPANY, Appellant,**

v.

**David BRATTON, et al., Appellees.**

**No. 14475.**

Court of Appeals of Texas, Austin.

May 28, 1986.

John D. Hart, Glandon, Erwin, Scarborough, Baker, Choate & Arnot, Abilene, for appellant.

E.L. Hamilton, Senterfitt, Childress, Hamilton & Shook, San Saba, for appellees.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

SHANNON, Chief Justice.

Appellant Amber Oil & Gas Co. sued appellees David Bratton and Bratton Ranch Co. in the district court of McCulloch County seeking damages and a permanent injunction. After a bench trial, the district court rendered judgment for appellees. This Court will affirm the judgment.

Amber pleaded that it owned and operated an oil and gas lease covering five hundred twenty-five acres in McCulloch County [The Bratton Ranch]. Before the expiration of the primary term, Amber drilled a gas well and, because no market existed, the well was shut-in. Amber alleged that although it had made timely shut-in royalty payments to its "lessor," appellees denied it access to the ranch so that it was unable to develop its property.

Appellees pleaded ownership of the surface and one-half of the minerals in the ranch, and, further, that they had not been paid any shut-in royalties. Accordingly, appellees claimed that Amber's failure to pay them one-half of the shut-in royalties resulted in a termination of the oil and gas lease as to their one-half mineral interest.

Upon request, the district court filed findings of fact and conclusions of law. The district court found, among other things, that Bratton's predecessors-in-title, Perry G. and Edith Kilcoyne, executed an oil and gas lease to Michael E. Lillis in 1975. Lillis assigned the oil and gas lease to Amber in 1978. No notice of this assignment was furnished the lessors. In 1979, the Kilcoynes deeded the surface and one-half of the minerals to appellees.

In July 1980, Amber drilled on the Bratton ranch. Some time in 1980, Amber hired Lillis to work for it at the well-site. Bratton told Lillis sometime in 1980 that he owned the surface of the ranch. On July 24, 1980, appellees gave written notice to Lillis of their purchase of the surface and one-half of the minerals. The district court made no finding whether Lillis forwarded

this notice to Amber. In August and September 1980, Lillis signed Railroad Commission forms indicating that he was Amber's "authorized representative." Amber completed the shut-in gas well on July 29, 1980. Pursuant to the shut-in royalty provisions of the oil and gas lease, Amber paid shut-in royalties to the Kilcoynes for several years, but did not pay appellees their shut-in royalties for their one-half interest in the minerals. In 1984, Amber tendered to appellees the shut-in royalties for 1984 and the previous three years. Appellees refused the tender and took the position that the lease had terminated as to appellees' one-half mineral interest. Because Amber did not timely pay shut-in royalties to appellees, the district court concluded and rendered judgment that the lease had terminated as to appellees' one-half mineral interest.

The lease in this appeal is typical and provides in paragraph three that the lessee or its assigns shall have the right to exploit the mineral estate for a set primary term and "as long thereafter as oil and gas, or either of them, is produced in paying quantities." The lease goes on to provide that if a gas well is drilled and shut-in, it shall be deemed to be producing in paying quantities (and therefore to continue the lease under paragraph three) if the lessee pays $150 annually as shut-in royalty.

In the absence of actual production, an oil and gas lease will not continue in effect beyond the primary term unless a timely payment of shut-in royalties is made. *Freeman v. Magnolia Petroleum Co.*, 141 Tex. 274, 171 S.W.2d 339 (1943). This appeal presents the slightly different question of whether payment of shut-in royalty mistakenly made to the wrong party will operate to continue the lease in effect.

The oil and gas lease involved in this appeal creates a fee simple determinable in the lessee, which may continue indefinitely until terminated by a stated event (*i.e.*, cessation of production in paying quantities.) *Gulf Oil Co. v. Reid*, 161 Tex. 51, 337 S.W.2d 267 (1960). Because payment of a shut-in royalty is a substitute for production which keeps the lease in effect, failure to make a timely shut-in payment is the equivalent of cessation of production, and the lease automatically terminates. *Freeman v. Magnolia, supra.* The rule is generally applied rigidly against the lessee because time is of the essence in an oil and gas lease. *See Young v. Jones*, 222 S.W. 691 (Tex.Civ.App.1920, no writ).

Most law concerning payment of shut-in royalties has developed by analogy to delay rentals. Delay rentals are periodic payments (usually annual) by the lessee for the privilege of deferring exploration during the primary term. Shut-in royalties, similarly, are periodic payments for the privilege of deferring exploration and production after the primary term. Failure to make either of these payments properly usually results in automatic termination of the lease. *See Phillips Petroleum Co. v. Harnly*, 348 S.W.2d 856 (Tex.Civ.App.1961, writ ref'd n.r.e.) (delay rentals and shut-in royalties are treated identically).

Although we have been shown no Texas opinion addressing the problem of mistaken payment of shut-in royalties, there are several opinions in which the courts have held that mistaken payment of delay rentals will terminate a lease. In *Coker v. Benjamin*, 83 S.W.2d 373 (Tex.Civ.App.1935, no writ), the lessee mistakenly believed that the delay rental was $100 annually, and made payment accordingly. The delay rental was actually $75 semiannually, so the lessee failed to pay the second $75 installment when it was due. The court held that the lessee's failure to pay the rental properly was entirely due to his own negligence, that the lessor was in no way at fault, and that, therefore, the lease automatically terminated when the lessee failed to make the second payment. The court held that the lessee was not entitled to correct his mistake by paying the delay rental late.

Similarly, the court in *Young v. Jones*, *supra*, held that an oil and gas lease had terminated when the lessee mistakenly paid $73.29 as delay rental and the correct amount was $76.25. This result does not

follow when the lessor is in some way to blame for the mistaken payment. *See Phillips Petroleum Co. v. Harnly, supra; Humble Oil v. Harrison,* 146 Tex. 216, 205 S.W.2d 355 (1947); *Meier v. Suntex Oil & Gas Co.,* 413 S.W.2d 944 (Tex.Civ.App.1967, no writ).

In the present appeal, lessor appellees diligently complied with the notice provisions of the lease while lessee Amber failed to do so; hence there was no fault on appellees' part which would justify departing from the usual rule that the lease automatically terminates when shut-in royalties are not timely paid (and substituted production therefore ceases.)

The judgment is affirmed.