BAKER et ux. v. HAMILTON.

No. 14921.

Court of Civil Appeals of Texas. Fort Worth.

March 26, 1948.

Rehearing Denied April 23, 1948.

Joe H. Cleveland and T. H. Yarbrough, both of Bowie, for appellants.

Stine, Bunting & Stine, of Henrietta, for appellee.

SPEER, Justice.

Appellants, G. W. Baker and wife, Martha C. Baker, instituted this suit against appellee, L. B. Hamilton, Jr., in the District Court of Montague County, Texas.

By what they term a modified form in trespass to try title, appellants sought to

have the cloud of an outstanding oil and gas lease removed from their title to a described 230 acre tract of land.

The case was tried to the court without a jury, resulting in a denial of the relief asked by appellants, but holding that appellee's lease on the land was effective and that two annual rental payments tendered and deposited in the registry of the court be awarded to appellants. The Bakers, plaintiffs below, have appealed.

There is no statement of facts in form as such and of course no conflict in any issue of fact. The parties have stipulated all facts material to a disposition of this appeal, for all of which they are to be commended.

On August 12, 1944, appellants executed to one L. T. Ratliff what is commonly known as an "unless" oil and gas lease on their land; and appellee, L. B. Hamilton, Jr., thereafter became the assignee of the lease. No well has ever been drilled on the premises and under the provisions of the lease appellee was required to pay $230.00 to appellants on or before August 12th of each succeeding year to keep the lease effective for the ensuing twelve months. The rental was paid on or before August 12, 1945, about which there is no controversy here. Another annual rental installment became due and payable on or before August 12, 1946, and its attempted payment provoked this law suit.

The stipulated facts show that subsequent to the time appellee acquired the lease he made a business arrangement with Mr. Sam R. Mays to look after all matters pertaining to the lease, by which Mays was to have a contingent interest therein. Appellee lived at Houston, Texas, and on August 8, 1946 sent his check to Mays and instructed him to pay the $230.00 rental to appellants, who lived on their farm six miles from Saint Jo, Texas. Mays went to their home at 11:00 o'clock P.M. on August 12, 1946, apprised appellants that he had an interest in the lease and wanted to pay the rental. He gave appellants his personal check on a Wichita Falls bank for the correct amount and they received the check "in the same manner as they would have received the check of L. B. Hamilton, Jr., subject to

its payment." Mays did not have enough money to his credit to pay the check on the day it was given but on the next day at the opening of the drawee bank, Mays deposited sufficient funds to cover the check. Mays' account at the bank fluctuated from day to day and on August 13th he arranged with an officer of the Bank to pay his check to appellants whether he had sufficient funds to his credit or not. The bank's officer caused a memorandum to be written on the ledger sheet of Mays' account, indicating that the bank would pay the outstanding check when presented for payment, irrespective of the condition of Mays' account. On August 29th the ledger sheet became full, it was taken out and a new sheet inserted but the memorandum on the old sheet was not placed on the new one.

Appellant Baker was in bad health at the time he received the check from Mays on August 12th but he went to Saint Jo, his nearest banking town, on August 14th and was there during business hours. Appellants lived on a rural U. S. mail route where a carrier passed each week day going to Saint Jo. On September 17th appellant Baker endorsed Mays' check and deposited it with the Saint Jo bank for collection. Three days were necessarily required for the check to pass and be cleared through the Federal Reserve Bank and reach the drawee bank at Wichita Falls. In due time the check reached the drawee bank at Wichita Falls on September 20th; Mays did not have sufficient funds to his credit when the check was received, the officer with whom he had made arrangements to pay it when presented was out of the bank and the memorandum on the old ledger sheet not appearing on the new one, the Wichita Falls bank refused payment of the check for lack of funds to the credit of Mays, the drawer. The check was returned in due course of the mail to the Saint Jo bank unpaid. The last named bank charged the check back to appellant's account and so notified him by mail on September 23rd, returning the unpaid check with the notice. On September 24th, the officer of the Wichita Falls bank returned and learned that payment of the check had been refused, he called the Saint Jo bank and advised that

payment had been refused through mistake and if the check would be returned it would be paid. The Saint Jo banker saw appellant next day and told him of the telephone conversation. The check was never returned for payment. If the check had been presented for payment any time between August 12th, the date appellants received it, and August 29th, it would have been paid. There were two days in that period when Mays did not have sufficient funds to his credit to pay the check but under the arrangements he had with the drawee Bank it would have been paid in any event. On three different occasions after payment had been refused by the drawee bank, as above pointed out, Mays went to appellants and tendered the money in payment of the check (the dates of these three occasions are not stipulated). Appellants declined to accept any cash payment from Mays on the occasions tender was made because "he was tied up on another deal." The check has never been paid.

The instant suit was filed June 5, 1947. Pending the suit another rental payment date of August 12, 1947 approached and prior thereto appellee Hamilton tendered to appellants $460.00 to cover rental for August 12, 1946 and August 12, 1947. The tender was declined by appellants and appellee tendered the amount into court and it was received and held in the registry of the court when the case was tried.

The judgment entered recited the execution of the lease by appelants and its assignment to appellee. The judgment provides that the court having heard the stipulated facts finds "that the plaintiffs (appellants) were negligent in the manner of presenting the rental check for payment and that said negligence was a proximate cause of the same not having been paid when presented." The trial court further found that appellee had not defaulted in the payment of any delay rentals falling due August 12, 1946 and 1947 respectively and that he had continued to tender the same and had deposited the sum of $460.00 in the registry of the court for the purpose of paying the two years' rentals, and, as above indicated, denied appellants' prayer that the cloud on their title, occasioned by the lease, be removed and awarded to appellants the $460.00 then in the registry of the court.

Appellants assign six points of error. They are, in substance, the court erred in the judgment entered because: (1) Under the "unless" lease no well was ever drilled and no delay rentals were paid for the year beginning August 12, 1946; the failure to pay rental was caused by appellee's agent withdrawing his funds from the Bank instead of leaving them there for the purpose of paying the outstanding check given to appellants. (2) When Mays gave the check to appellants, he did not have sufficient funds in the bank to pay same. (3) The judgment was based upon the erroneous theory that the Negotiable Instruments Act controls the transaction. (4) Delay in presenting the check for payment before August 29th was not negligence proximately causing failure of payment. (5) The court could not grant equitable relief to appellee and hold the lease effective when no delay rentals had been paid. And (6) appellee assumed as hazards of timely paying rentals by choosing to pay through his agent Mays, who attempted to pay by check and trusted the drawee bank to pay for him at a time when he had withdrawn his funds from the bank.

Just here we note that appellants' second point of error asserts that no payment of rentals was made to them by the check of Mays received on August 12th, for the reason Mays did not have sufficient funds in the drawee bank at that time to pay the check. It was stipulated that he had in the bank on that day $92.00; on the next morning when the drawee bank opened for business, Mays deposited additional funds sufficient to cover the check issued by him, and of course it would have remained so if he had not subsequently drawn checks against it. It would have been a physical impossibility for appellants to have presented that check to the drawee bank for payment the day on which it was given. There is no real merit in the contention and the point is overruled.

The five remaining points of error are such in their nature that they pertain to substantially the same subject matter and

we deem it advisable to discuss them together.

From this record as a whole we have concluded that the trial court erroneously entered judgment in favor of appellee. We believe the appellants should have been granted the relief prayed for. We shall presently demonstrate why we believe this.

It is necessary that we eliminate some speculative theories which may or may not have affected the conclusions reached by the trial court. Under the ordinary terms of commerce when appellee contracted for the privilege of keeping his lease effective one year at a time by paying an agreed rental payment, it will be construed to mean that he would pay money. This general rule is not applicable if the party to whom payment is to be made agrees to accept the equivalent of money, although he was not under legal obligation to do so. Odle v. Barnes, Tex.Civ.App., 2 S.W.2d 577. The same rule was recognized in Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 164 S.W.2d 488, where it was held that payment of delay rentals was satisfied when lessor accepted "syndicate certificates" in lieu of cash; and that when thus paid the pre-existing lease remained in effect and was not violative of the statute of frauds. In the instant case, appellants accepted the check of appellee's agent, subject to its payment.

It is quite apparent that appellee did not choose to make payment of the rentals in person but chose an alter ego in the person of Mays as his agent, and in turn Mays chose to give his personal check on an out of county bank and trusted that bank to make payment of his check. It was incumbent upon Mays, acting for appellee, to keep his account at the bank in such condition as would authorize the drawee bank to pay the outstanding check. There is no settled hard and fast rule of law as to how long this responsibility rests upon the drawer of the check. In the absence of agreements to the contrary, the implications of law will be read into the transaction, which mean that when Mays gave the check he represented that it was good and would be paid on presentation; and that appellants, the payee, would present it for payment within a reasonable time. This check was never paid, and in view of this, certainly no rental payment was ever made and by the terms of the lease it expired in virtue of its own provisions.

Our procedure is one of blended law and equity but it requires the citation of no authorities to support the principle that if appellee, acting through his agents, Mays and the drawee bank, caused the failure of payment, he could not rely upon the initial act of giving a check which was never paid to keep effective a lease which terminated upon failure to pay; nor could appellants effectively deny receipt of payment when failure resulted from their own wrongful acts.

Appellants presented this check for payment on September 20, 1946. The drawee bank refused payment because of insufficient funds to the credit of the drawer of the check. The stipulated facts clearly show that Mays' account at the bank was comparatively small, ranging in amounts at all times after the giving of the check and to the date of its presentment from $92.00 to $322.00, the largest amount during the period. The account was an active one because of frequent checks drawn by Mays and small deposits made from time to time. Appellee Hamilton could not rely upon payment by Mays' check as satisfaction of the rental payment when Mays thereafter checked his money out of the drawee bank for other purposes than the satisfaction of the check he had given to appellants.

Moreover, there were four days in the intervening time after the giving of the check and time of presentment when Mays' account at the drawee bank was insufficient to have paid his check if presented. This, however, would not condemn the validity of the check if it had been paid when presented for the purpose at a later date; it was only a hazard to appellee, resulting to his advantage, because the check was not presented on one of those days when there were insufficient funds prior to the date on which payment was refused.

As we read the judgment entered by the trial court, it found, in effect, that appellee had paid the rental due August 12, 1946, which was necessary to prevent the lease

from terminating under its terms; otherwise the court would have been compelled to declare the lease terminated and to give appellants the relief sought. The unqualified stipulation is to the effect that Mays' check had never been paid. Apparently appellee concedes this to be true because both he and Mays tried on several occasions thereafter to get appellant Baker to accept payment under the terms of the lease. Unless it can be said that appellants' acts prevented timely payment by appellee, all subsequent tenders of payment would avail appellee nothing. It is plain to us that unless rentals were timely paid, appellee had no lease or other rights in appellants' land.

The controlling question before us is: Was appellants' delay in presenting Mays' check for payment to the drawee bank in another county such negligence as would immunize Mays, as appellee's agent from paying his check when presented?

As between the parties to this suit, Mays, acting for appellee, chose the Wichita Falls bank as a medium through which he expected to pay the rentals and thereby keep the lease effective for the benefit of appellee; to that extent the bank was the agent of appellee, certainly it was not an agent of appellants. It has been held that when a payor used the medium of the U. S. mails to make a remittance before a specified time and such remittance was miscarried, timely payment was not made. In Appling v. Morrison, Tex.Civ.App., 227 S.W. 708, the court had a somewhat similar question to the one before us. There were no provisions in the "unless" lease authorizing the lessee to pay rentals through the U. S. mail. It provided that lessee must pay rentals on or before a given date, otherwise the lease terminated. Lessee mailed his check to lessor at a time when under ordinary circumstances it would have reached lessor before the rentals were over due; but the remittance was miscarried in the mails and it arrived too late. Court held the contract was not one in the nature of a forfeiture but was one of limitation or option and that equity would not supply the dereliction and the lease terminated under its own terms.

We are not concerned in this appeal with whether or not the mediums through which appellee sought to make payment are liable to him for losses sustained by a failure of performance of duty. Nor do we mean to indicate that there was either liability or nonliability because of such failure.

The Uniform Negotiable Instruments Act, Art. 5947, R.S., sec. 186, reads: "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

Section 193 of the same article, 5948, reads: "In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case."

Section 196, Ibid., reads: "In any case not provided for in this Act the rules of law and equity including the law merchant shall govern."

From a reading of section 186 of the Uniform Negotiable Instruments Act we think it not applicable to this case for the reasons: (1) It can apply only where a debt exists between debtor and creditor and the former attempts to pay with a check. In such cases if the creditor holds the check an unreasonable time before presenting it for payment and loss results to the drawer therefrom, the holder is penalized. He could not thereafter recover the debt covered by the check. In the instant case the relation between appellants and appellee is not that of creditor and debtor. We have seen no case in which that section of the Act has been applied in a case of this character. (2) Substantially all the cases coming to our attention which involved the cited section of the Act were instances in which the drawer of a check has thus attempted to pay his debt to the drawee and the latter fails to diligently present the check for payment and the drawee bank fails before presentment of the check having sufficient funds of the drawer on deposit to make payment at the time of the bank's closing. Dulberg v. Equitable Life Assur.

Soc. of the United States, 252 App.Div. 209, 297 N.Y.S. 166, 169, considered the effect of delay in presenting a check for payment given to cover a life and accident insurance premium, at a time when the grace period in the policy was about to expire. Without referring to the Uniform Negotiable Instruments Act, the court recognized the general rule of diligence required in such matters, and quoting from an earlier decision said: "The only way in which a drawer of a check can be exposed to injury by such delay (presentment for payment) is where the bank becomes insolvent, subsequent to the delivery of the check, and prior to its presentment." The cited case was reversed (277 N.Y. 17, 12 N.E.2d 554) upon grounds there stated without comment upon the rule announced and quoted above from the intermediate court.

We have found little aid in this appeal from holdings in insurance cases, because in those cases the courts have drawn a not very well defined distinction between "forfeitures" of insurance policies which provide that they shall "lapse" or become void unless premiums are paid at stated times to continue the life of the policy to a given time in the future and the termination of an "unless" oil and gas lease which provides that it shall terminate if the lessee fails to pay designated rentals in advance to cover an ensuing year. It seems that in the insurance cases because the courts hold forfeitures in disfavor they will give the contract a liberal construction so as to avoid a forfeiture if it can consistently be done. While in the class of oil leases we have before us there is no forfeiture to avoid but that the rights under the lease just terminate ipso facto if payment of rentals are not made.

In Bradley v. Andrus, 3 Cir., 107 F. 196, 53 L.R.A. 432, cited by appellants, it was held that the drawer of a check is not prejudiced by a bona fide holder for value failing to present a check for payment within a reasonable time except where the fund against which the check was drawn was lost by a failure of the bank. This holding is not necessarily applicable in this case because of the interest therein of an innocent endorsee and a patent fraud perpetrated by the drawee on the drawer as disclosed by the opinion.

To apply the provisions of Section 196, supra, to this case as an instance in which Section 186 does not apply, we are confronted with substantially the same rule of law because we are brought within the realm of the rules of equity and the law merchant. That rule of law has been applicable in this state for a great many years. In the early case of Chambers, Adm'x, v. Hill, 26 Tex. 472, decided in 1863, the court had before it the question of whether or not a demand bill had been timely presented for payment. The court reasoned that "as respects the time when presentment for payment must be made, the rule is that it must be within a reasonable time after the bill has been received, depending on distances and other circumstances; otherwise the drawer and endorsers will be discharged. * * * What is a reasonable time when there is no determinate usage of trade must depend upon all the circumstances of each particular case and when the facts have been ascertained or are not disputed, the reasonableness of the time is a question of law; but when the facts are contested the question of law becomes mixed with fact and is for the decision of the jury."

In January, 1938, the Highest Court of New York, in Dulberg v. Equitable Life Assur. Society of United States, 277 N.Y. 17, 12 N.E.2d 554, announced the same rule as that shown in the old Chambers v. Hill case, supra, using substantially the same language, citing earlier New York cases. No reference is made to the provisions of the Uniform Negotiable Instruments Act.

In the instant case there is no dispute in the facts nor conflict in the testimony and under authority of the last cited case the question of delay in presentment becomes one of law.

We have previously pointed out that the trial court found that appellants were negligent in the presentment of the check for payment which proximately caused its nonpayment. Viewing the uncontroverted facts as stipulated, we must assume that the court's judgment was based upon the failure

to present the check for payment between August 12th, the date on which it was given, and August 29th, the period of time in which it was stipulated that if it had been presented between those dates it would have been paid. It will be observed that this stipulation was not because Mays, the drawer of the check, had sufficient funds on deposit with the drawee bank at all times to require payment, this for the reason that it is clear from the stipulation that he did not have sufficient funds at all times during that period to make payment; but it is because the bank official had promised to take care of the check when presented and the manner in which he handled the matter in the bank terminated on August 29th. Then we may ask, if the failure to present the check for payment between those dates was negligence and a proximate cause of failure to pay as a matter of law? We observe that it required three days after depositing the check in the collecting bank for it to clear through the Federal Reserve Bank and reach the drawee bank, and an equal length of time for returns of the drawee bank to reach the collecting bank, which would have consumed six days of the period of time before appellants would have known whether or not the check had been paid. At most there would not have been more than ten clear days in which this appellant, in bad health suffering with a heart trouble and residing in a rural district, would have had to present the check for payment and learn of the returns thereon. Under all of the facts and circumstances surrounding this controversy, we are unwilling to say that as a matter of law that the delay proximately caused the loss of the lease to appellee.

In a construction of this form of "unless" lease, we are not confronted with a forfeiture of a contractual right, for indeed the termination of appellee's rights in such contracts as this do not forfeit, as that term is commonly used. Lessee contracts to pay rentals at certain times, under a penalty that if he fails, the lease ipso facto terminates. Humble Oil & Refining Co. v. Mullican, 144 Tex. 609, 192 S.W.2d 770.

Our laws look with disfavor upon forfeitures, especially in cases involving insurance policies, yet these lease contracts do not involve forfeitures but are questions of limitation, option and privilge; timely payment is a condition precedent to a lessee having any rights under the lease. Vol. 2 Summers Oil and Gas, Perm.Ed., §§ 341, 344. Pages 231, 244 and 246. At the last cited page it is said that a court of equity has no power to prevent the termination of a lease under such conditions. Supporting the same rule thus announced is Appling v. Morrison, Tex.Civ.App., 227 S. W. 708; Wilson v. Gass, Tex.Civ.App., 289 S.W. 141; and Gillespie v. Bobo, 5 Cir., 271 F. 641. In such cases as the instant one, time of payment is the essence of the contract and the instrument must be strictly construed against the lessee. Young v. Jones, Tex.Civ.App., 222 S.W. 691; Cockrum v. Christy, Tex.Civ.App., 223 S.W. 308; Bailey v. Williams, Tex.Civ.App., 223 S.W. 311.

It is said in 10 C.J.S., Bills and Notes, § 355, page 861 that the holder is not required to present the check a second time after payment has been refused by the drawee bank. Mays could scarcely expect to protect the rights of his principal (appellee) by giving his personal check as a conditional payment for delay rentals and then proceed to draw his funds out of the bank for other purposes at times when the check might be and actually was presented for payment. He did not choose to endorse to appellants the appellee's check which he obviously had in his possession at the time. He deposited that check, which was good, to his own personal account and checked against it.

Aside from point No. 2 overruled above, we sustain the remaining points of error presented by appellants, and reverse the judgment of the trial court and here render judgment for appellants as prayed for in their petition. The deposits of tender into the registry of the court by appellee Hamilton will be returned to him, and the costs in the trial court and in this court will be taxed against appellee.

Reversed and rendered.

McDONALD, Chief Justice.

I concur in the result reached, though not in all that is said in the opinion written by Mr. Justice SPEER.

The provisions of the "unless" clause of the lease constituted a limitation on the grant, but the parties to the lease could lawfully change the medium of payment of the delay rentals, and waive strict performance thereof, without violating the Statute of Frauds. Gulf Production Company v. Continental Oil Company, 139 Tex. 183, 164 S.W.2d 488. Both under the general rules relating to acceptance of a check as payment, and under the stipulations of the parties, the acceptance of the check in this case did not constitute an absolute payment of the rentals, but only a conditional payment. The condition created by the express agreement of the parties was that the check should constitute payment of the rentals if paid by the drawee bank. In such a case, however, the law would imply certain undertakings on the part of the parties to the transaction. One undertaking so implied would be that the lessor would, in accordance with usual commercial practices and the law pertaining to negotiable instruments, present the check for payment or cause it to be presented, and that he would do so within a reasonable time. On the lessee's part there would be implied an undertaking to see that money was kept on deposit in the drawee bank in an amount sufficient to pay the check, or at least that an arrangement would be made with the drawee bank that would result in payment of the check on presentation whether the funds in the drawer's account were sufficient for the purpose or not. Mays undertook to make an arrangement with the bank to cover an overdraft, but the arrangement proved to be ineffective. Under the stipulated facts Mays was the lessee's agent in the handling of the rental payment, and it seems clear that the lessee must answer for all that was done by Mays.

The trial court found that the lessor was negligent in not presenting the check for payment more promptly. It does not follow, however, that the lessor's negligence was the direct cause of the check not being paid. The direct cause of the nonpayment was Mays' own act in withdrawing his funds and using them for other purposes. His duty to keep sufficient funds on deposit to pay the check was at least as great as was the duty of the lessor to present the check promptly. We could not reasonably say that, as between Mays and the lessor, Mays was only under a duty to keep his check good for a few days, and that after a few days he could take the position that the lessor had lost his right to have the check paid. When Mays withdraw his funds and used them for other purposes, he suffered no loss when the check he had given the lessor was not paid by ·the drawee bank, even though, looking backward, he may now wish that he had used his funds to pay the rental check instead of for other purposes.

The controlling factor in the question of causation is simply this: Mays withdrew funds which he should have left on deposit to cover the rental check, and he did not make an effective arrangement with the bank to meet an overdraft. His own conduct was the direct cause of nonpayment of the check. His principal, the lessee, having trusted Mays to handle the matter, must suffer the consequences.

HALL, Justice (dissenting).

The law as set out in both opinions is substantially correct except as hereinafter discussed. The established rule in Texas that upon failure of the lessee either to begin a well or to pay the delay rentals under an "unless" lease, the lease ipso facto terminates on the day designated in the lease for such action, is a harsh one and the courts should not engraft thereon a more severe limitation than it now contains.

For the purpose of this dissent, appellant will be considered as grantor and payee of the check, while appellee will also be designated as grantee and payor of the check.

Under the above announced rule, if appellee had waited one minute past 12:00 o'clock A. M. on the night of August 12, 1946, to deliver the check in question, the lease would have terminated, even though appellant knew that appellee was making an honest effort to reach his place for the purpose of paying the delay rental.

The agreed statement of facts recites that appellee gave the check in question to appellant and that appellant accepted the

same before the lease lapsed. If this check was good when it reached the drawee bank, to-wit: the City National Bank of Wichita Falls, Texas, then the lease did not lapse. If the check can be termed a worthless check, then the lease did lapse, unless saved by the negligence of appellant in not sending it through in due course of business, as set out in the court's judgment, which the writer deems to be correct.

The majority opinion and the concurring opinion treat the check as having been a worthless one at the time it was, by mistake, marked insufficient funds by an employee of the payee bank. In the majority opinion, by Associate Justice SPEER, it is stated in part as follows: "It was incumbent upon Mays, acting for appellee, to keep his account at the bank in such condition as would authorize the drawee bank to pay the outstanding check," and in the concurring opinion, by Chief Justice McDONALD, it is written, "The direct cause of the non-payment was Mays' own act in withdrawing his funds and using them for other purposes." This line of thought, in the main, establishes the contrast of difference·between the two opinions and this dissent.

The writer is firmly convinced that the check, from the time it could have reached the payee bank, was at all times good and, therefore, could not be considered worthless, even though through the minute details of handling the banking business an employee of the bank inadvertently through mistake marked the same insufficient; such action on part of the employee of a bank does not ipso facto make the check a worthless one. It does not in any way legally depreciate the value of the same; neither will such mistake invalidate title to realty. In the stipulation between the parties, it is noted that appellee secured from the payee bank an unqualified line of credit set apart for the sole purpose of paying this particular check. They further agree that the payee bank was solvent at all times; therefore, the entire assets of the City National Bank of Wichita Falls were pledged as security for payment of the check in question. Authority of the cashier to make the loan or to extend such credit

is not questioned by appellant, but is admitted.

In the main opinion it is found: "The controlling question before us is: Was appellants' delay in presenting Mays' check for payment to the drawee bank in another county such negligence as would immunize Mays, as appellee's agent, from paying his check when presented?" While this may have been one of the theories upon which the trial court rendered his judgment, yet the writer feels that the controlling question is: Does title to real estate, to-wit: an oil and gas lease, terminate by a mistake having been made while cashing a good·and sufficient check? To so hold will engraft upon the already harsh rule supra a more onerous burden upon grantees' title to oil and gas leases. Even though we all have failed to find cases directly in point, yet it should be the law, since a great majority of business is handled through the banks by medium of exchange, that by accepting a good and sufficient check, wherein title to realty may become vested, that it would carry with it the burden of the payee to absorb honest mistakes that may occur while cashing the same through the synchronized banking systems of the United States, to the extent that the acceptor of the check would owe a duty of re-presenting the check for payment. The day upon which appellant received the check from the bank marked insufficient funds, he was notified by his own banker that there had been a mistake made, that the check was at all times good and that if the would send it back through he would receive his money. The writer feels the same as appellee recites in his counter point No. 5 that appellant owed the duty to again present same for payment.

The facts surrounding the cashier of the drawee bank wherein it set up a special fund or trust fund to pay this check by placing a notation on the ledger sheet and the ledger sheet having become full was removed but such trust fund was not brought forward, present the same question as though appellee had on deposit the sum of $1,000.00 and when the ledger sheet became full a new one was inserted and by mistake $100.00 was brought forward, thereby mak-

ing the check in question insufficient and by such action title to real estate fails. This is not tenable.

It is stated in 31A Tex.Jur., p. 316, that where the lessor attempts to terminate or forfeit the lease or otherwise asserts claims that are contrary to the lessee's title and rights under the lease, the lessee may invoke the aid of equity to quiet his title.

If the check was good, as contended by the writer, then equity will lend aid to encounter justice by and through several of its maxims, to-wit:

(1) Equity will not suffer a wrong to be without a remedy. This maxim includes the whole theory of equity jurisdiction to the extent that it extends relief wherever a right exists and where no adequate remedy of law is available.

(2) Equity regards that as done which ought to be done. This maxim is usually applied only for the purpose of doing equity between the parties yet operates in favor of such persons and will not be enforced to the injury of innocent third parties. By the force of this maxim, defective instruments and records are supplied, except of course records of judicial proceedings. See Lacy et al. v. State Banking Board, 118 Tex. 91, 11 S.W.2d 496. There are no third parties involved in the instant case.

(3) Equity regards substance rather than form. By the force of equity this principle goes behind the form of a transaction in order to give effect to the intention of the parties and by its application it disregards mere technicalities. In other words, equity will not aid those who desire to invoke it on mere technicalities, such as the one contended for by appellant.

As was stated in the case of Cook v. Leslie et al., Tex.Civ.App., 59 S.W.2d 302, 303, "Equity has incarnated the Golden Rule so as to compel unwilling men to act toward others as they would ask that others act toward them. It has erected a court of conscience and higher justice, and rendered the ironbound rules of law kind, human, and considerate of the rights of others. The maxims of equity find a place for expression under the facts in this case. The courts of Texas uniformly enforce those maxims. Tex.Jur. Vol. 17, §§ 35, 36, 37."

Another reason why this judgment should be affirmed, even though the check, as contended by appellant and as found by the majority, was worthless at the time it was marked insufficient, is, that when the appellant immediately found out that the check was actually good and there had been a mistake made by an employee of a bank, he attached value to the check by his own action in keeping the same from September 24, 1946 until June 27, 1947. There is no question but that if he had presented the check for payment any time during that period of time, or thereafter, the check would have been paid; this is agreed to by the parties. The question which presents itself here is: Could the appellant take such advantage of an inadvertent mistake made in the details of handling the check to the extent that he could leave the title to this lease dangling in the air from the time he found out such mistake was made until he finally decided that he himself wanted to either cash the same and/or terminate the lease by not cashing it? It might be a different story if the check was actually worthless and he had not been informed that it at all times was a good one.

If, as contended by appellant, technically the check was worthless and the lease ipso facto died the minute the employee of the bank marked on the same "insufficient funds" but later found there was a mistake made and the check was good, then, in that event, by his own action in keeping a good check in his possession until two months before another delay rental was due, he thereby, by said action, renewed the lease by waiver of any defect that may have been in the check, because he could not, to use a common expression, "have his cake and eat it" at the same time. It is an established rule that a person can waive the payment of delay rentals and/or accept something other than legal tender for same.

Under the stated facts in this case, appellant, the payee of the check, had a cause of action against the drawee bank, to-wit: City National Bank of Wichita Falls, to enforce its payment, of course in this case said Bank was at all times willing to pay same. See Scoby v. Bird City State Bank et al., 112 Kan. 135, 211 P. 110. The state of facts under which the check was given in

the Scoby case is somewhat similar to the instant case.

For the above reasons this dissent is filed.