

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. PD-0914-09

### TROY A. BOWLEY, Appellant

### v.

### THE STATE OF TEXAS

### ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
### IN CAUSE NO. 07-08-0210-CR FROM THE SEVENTH COURT OF APPEALS
### LUBBOCK  COUNTY

**HOLCOMB, J., filed a dissenting opinion, in which MEYERS, PRICE, and JOHNSON, JJ., joined.**

I respectfully dissent.  I think the majority has misanalyzed this case and reached the wrong result.  Before I explain my view in detail, allow me to first review the relevant facts.

On November 27, 2007, a Lubbock County grand jury returned an indictment charging Troy A. Bowley with felony driving while intoxicated (DWI).  *See* Tex. Pen. Code § 49.04.  For purposes of offense enhancement, the indictment alleged that Bowley had two prior DWI convictions, one in Hockley County and one in Terry County.  *See* Tex. Pen. Code § 49.09(b)(2).  For purposes of

punishment enhancement, the indictment alleged that Bowley had two prior felony DWI convictions in Lubbock County. *See* Tex. Pen. Code 12.42(d).

On April 14, 2008, the State brought Bowley to trial before a petit jury. At the guilt stage of that trial, the State presented three witnesses and several exhibits, and Bowley presented one witness (himself).

The State's first witness, Lubbock Police Officer Brooks Jennings, testified that on the early morning of October 14, 2007, as he patrolled southeastern Lubbock in his police vehicle, he observed Bowley, who was driving a sport utility vehicle, commit a minor traffic offense. Jennings activated his police vehicle's overhead lights and pulled Bowley over into a motel parking lot. Jennings exited his vehicle, approached Bowley's vehicle, and asked Bowley for his driver's license and proof of insurance. Bowley produced a Texas identification card but no proof of insurance. Jennings noticed that Bowley "fumbled" with his wallet while trying to find his identification card. Jennings also noticed that Bowley's eyes were "bloodshot and glassy" and that he smelled of alcohol. Jennings asked Bowley to step out of his vehicle, and Bowley did so. Jennings then asked Bowley whether he would perform some field sobriety tests, and Bowley agreed to do so. Jennings then administered three such field tests to Bowley – the horizontal gaze nystagmus, the walk-and-turn, and the one-leg-stand. Bowley performed poorly on each of the tests. Jennings then arrested Bowley for driving while intoxicated.

Jennings testified further that he had had extensive training and experience with the field sobriety tests mentioned. Finally, he testified that on the night in question, his police vehicle had been equipped with a video camera and that that camera had recorded his encounter with Bowley.

During the latter part of Jennings' testimony, the State played for the jury the video of

Jennings' encounter with Bowley. That video (State's Exhibit One) showed that Bowley staggered repeatedly while performing the walk-and-turn test and that, despite repeated attempts, he could not perform the one-leg-stand test satisfactorily.[1]

The State's second witness, Lubbock Police Officer James Altgelt, testified that he had had extensive training and experience with field sobriety tests, and that such tests were "designed so that any normal person, provided that they're sober, [is] able to accomplish" them satisfactorily. Altgelt testified further that he had had extensive professional training in the recognition of intoxication and that, from his viewing of State's Exhibit One, Bowley's performance of the walk-and-turn and one-leg-stand field sobriety tests was "clearly consistent with intoxication."

The State's third witness, Jimmy Isbell, testified that he had been professionally trained in fingerprint identification and comparison, and that the fingerprints in State's Exhibits Four and Five matched fingerprints that he took from Bowley shortly before trial. (State's Exhibits Four and Five were certified copies of judgments showing that Bowley had been convicted of DWI in Hockley County in 1988 and in Terry County in 1991.)

Bowley, on direct examination, testified that on the night in question, he had the normal use of his mental and physical faculties and was not intoxicated. His testimony continued:

> Q: Troy, I'm going to show you State's Exhibit No. 4. And that's you [named in that judgment]; is that correct? This is one of your DWI's out of Terry County; is that fair to say?
>
> A: Yes, sir.

*   *   *

---

[1] The video was shot from a distance and, therefore, was unable to show the movements of Bowley's eyes during the horizontal gaze nystagmus field sobriety test.

Q: Okay. And, Troy, did you plead to that or take that to trial?

A: I pled to that.

Q: Okay. Why did you plead to State's Exhibit No. 4?

A: Because I was guilty of it.

Q: Okay. Let's do it again with State's Exhibit No. 5. This is [another judgment for] DWI, and this is you, out of Hockley County; is that fair to say?

A: Yes, sir.

* * *

Q: Did you take this case to trial or not?

A: No, sir, I didn't.

Q: Okay. Why did you plead?

A: Because I was guilty, sir.

During the State's cross-examination of Bowley, the following occurred:

Q: Okay. [Defense counsel] said that you pled guilty to all of those [DWI's] up there [in State's Exhibits Nos. 4 and 5] because you were; is that right?

A: Yes, sir, that is correct.

Q: You're not pleading guilty here today because you're not guilty; is that right?

A: Right. That is correct.

Q: Could it be that it's because we couldn't agree on a plea agreement that you preferred?

DEFENSE COUNSEL: Judge, I guess I will have to object on that. That's –

THE COURT: Sustained.

DEFENSE COUNSEL: Judge, as well, let me go ahead and ask that this court instruct the jury not to consider that in any type of deliberation, that it's simply just

not a proper area for a trial, Judge.

THE COURT: No instruction will be given.

DEFENSE COUNSEL: Judge, I guess to finish that and protect my objection, I will ask for a mistrial.

THE COURT: Denied.

The majority now holds that the State's question referring to plea negotiations was proper because "Bowley opened the door to [it] on cross-examination by creating a circumstance in which the jury could infer that his not guilty plea was truthful." *Bowley v. State*, No. PD-0914-09, ___S.W.3d___, ___ (Tex.Crim.App.____), slip op. at 7. However, even if the majority is correct that Bowley "opened the door" to the State's question, the trial court still could have reasonably determined that the State's question was objectionable because it asked for evidence that was inadmissible under Texas Rule of Evidence 403. Evidence that may otherwise be admissible because a party opened the door to it may nevertheless be inadmissible under Rule 403. *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex.Crim.App. 2007).

Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." "Probative value," as that phrase is used in the rule, refers to the inherent probative force of an item of evidence – that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation – coupled with the proponent's need for that item of evidence. *Gigliobianco v. State*, 210 S.W.2d 637, 641 (Tex.Crim.App. 2006). "Unfair prejudice" refers to a tendency to suggest decision on an improper basis. *Ibid.*

"Rule 403 gives the trial court considerable discretion to exclude evidence when it appears to that individual judge, in the context of that particular trial, to be insufficiently probative when measured against the countervailing factors specified in the rule." *Winegarner v. State*, 235 S.W.3d at 791.

Given the nature of the evidence sought by the State's question – an admission by Bowley that he pled "not guilty" because he and the State could not agree on a plea bargain – the trial court could have reasonably concluded that that evidence was insufficiently probative when measured against the danger of unfair prejudice. Why do I think that? First, the trial court could have reasonably concluded that, in the context of that particular trial, the inherent probative force of such an admission by Bowley would have been modest while the State's need for it was close to non-existent.[2] Second, the trial court could have reasonably concluded that the danger of unfair prejudice posed by such an admission was great. As the court of appeals noted, "mention of plea negotiations having occurred could mistakenly lead a juror to conclude that [Bowley] believed himself guilty since an innocent person would not contemplate admitting guilt." *Bowley v. State*, 280 S.W.3d 530, 532 (Tex.App.–Amarillo 2009). The potential impact upon jurors of the mention of plea negotiations cannot be overstated.

As an appellate court judge now reviewing a cold record, I cannot say that the trial court's decision that the State's question was objectionable was clearly outside the zone of reasonable disagreement. Had I been in the trial court's shoes, I might have made a different decision, but that

---

[2] Think for a moment about the strength of the State's case against Bowley. The State had the clear and quite damning testimony of Officers Jennings and Altgelt, recounted above, together with the video of Jennings' encounter with Bowley on the night in question. I have viewed that video, and I do not exaggerate when I write that it was most likely devastating to Bowley's defense.

is not the standard of appellate review. Furthermore, in my humble opinion, the court of appeals was correct in concluding that "the grave risk of undue prejudice went unabated when the trial court withheld its instruction to disregard" the State's reference to plea negotiations. *Id*. at 533.

I would affirm the judgment of the court of appeals. Because the majority does not do so, I respectfully dissent.

FILED MAY 5, 2010

PUBLISH