**Opinion issued July 2, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-01013-CR

_____

**JOSE ALFONSO GUERRERO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1741578**

---

## MEMORANDUM OPINION

A jury convicted Jose Alfonso Guerrero of driving while intoxicated.[1] The

trial court assessed punishment at forty-four days' confinement and a $500 fine. In

---

[1]    TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2012).

four issues, Guerrero contends that the trial court erred in admitting (1) the arresting officer's testimony regarding the results of Guerrero's performance on a Horizontal Gaze Nystagmus (HGN) test, and (2) a video showing nystagmus in HGN testing on another individual as demonstrative evidence. We affirm the trial court's judgment.

## Background

On the night of March 3, 2011, Officer M. Perales was patrolling near Reliant Stadium. Guerrero was driving near the stadium after eating dinner and attending a livestock auction at the rodeo with friends. Perales first observed Guerrero's vehicle stopped at a red light and then witnessed Guerrero drift out of his lane to the left three times and make "jerking corrections" to return to the proper lane. Guerrero traveled at a normal speed in the right lane while Perales followed slightly behind Guerrero in the middle lane. When Guerrero drifted or swerved slightly in front of other drivers, causing one to slow and another to change lanes, Perales made a traffic stop. When he approached and talked with Guerrero, Perales noticed "[a] distinct odor of alcoholic beverage, slurred speech, glassy eyes." Guerrero said that he was leaving the rodeo and was on his way home. A passenger, who had been at the auction with Guerrero, was in the vehicle.

Officer Perales removed Guerrero from the vehicle and away from his passenger. Perales testified that Guerrero "continued to have the distinct odor of

2

alcoholic beverage" and "had slurred speech and continued to have the glassy eyes." Perales asked Guerrero if he had been drinking. Guerrero first said no, but later said that he had one twelve-ounce Dos Equis a few hours earlier with his dinner. When Perales asked Guerrero if he was taking any kind of medication, Guerrero responded that he was using hair-growth medication. When Perales asked Guerrero about diabetes, he said that that he had diabetes and took medication.

Officer Perales administered four field sobriety tests to Guerrero—the HGN, the one-leg stand, the walk-and-turn, and the Rhomberg—which were recorded on the camera in Perales's vehicle. Perales explained each test to Guerrero and testified that Guerrero appeared to understand the instructions. Perales administered the HGN first. Perales testified that Guerrero was a candidate for the test because he had equal pupil size and equal tracking. According to Perales, Guerrero displayed all "six clues" indicating intoxication on the HGN test—lack of smooth pursuit, distinct and sustained nystagmus, and onset of nystagmus before forty-five degrees in both eyes—and the clues are an indication of intoxication from drugs or alcohol.[2] He further testified that only four clues are necessary to

---

[2]     Nystagmus is an involuntary rapid oscillation of the eyes. *Plouff v. State*, 192 S.W.3d 213, 218 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Emerson v. State*, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994)). Administration of the test includes a series of passes to observe for nystagmus. In determining whether a person's performance on the HGN test suggests intoxication, an officer looks for three clues in each eye: (1) the lack of smooth pursuit, i.e., the eye cannot follow an object smoothly; (2) distinct nystagmus when the eye is at maximum deviation;

have probable cause to continue other tests or to arrest someone. Perales then administered the one-leg-stand to Guerrero and testified that he observed three clues indicating impairment—using arms for balance, dropping his foot to the ground one time, and swaying. Perales next administered the walk-and-turn test to Guerrero. Perales testified that he observed seven clues indicating impairment—losing balance during the instructions, using arms for balance, stepping off the line, stopping walking, taking the wrong number of steps, missing heel to toe, and making an improper turn. Last, Perales conducted a Rhomberg test during which Guerrero was to stand with his feet together, hands at his sides, head tilted slightly back, and eyes closed, and to estimate and tell Perales when thirty seconds had passed. Perales testified that he observed Guerrero sway, count out loud contrary to the instructions, and move around. Perales then arrested Guerrero for driving while intoxicated.

Officer Perales testified that he arrested Guerrero based on his observations that night, including the "distinct odor of alcoholic beverage on his breath, the slurred speech," and "the glassy, red eyes." Perales asked Guerrero for breath and

---

and (3) the onset of nystagmus before the eye has moved forty-five degrees. *McRae v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Compton v. State*, 120 S.W.3d 375, 377 (Tex. App.—Texarkana 2003, pet. ref'd)); *Quinney v. State*, 99 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2003, no pet) (citing NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., U.S. DEP'T OF TRANSP., DWI DETECTION AND STANDARDIZED FIELD SOBRIETY TESTING, STUDENT MANUAL VIII–17 (1995)).

blood samples and advised him of the consequences of refusing samples. Guerrero declined to provide either sample. Perales testified that Guerrero had lost the normal use of his mental and physical faculties, and was impaired and intoxicated solely due to alcohol consumption.

At trial, the court admitted into evidence the video made the night of the arrest.[3] Guerrero did not object to the video, but did object to any testimony by Officer Perales about the results of Guerrero's HGN test and moved to suppress the HGN results. After hearing Perales's testimony and viewing the HGN test portion of the video outside the jury's presence, the court denied Guerrero's motion to suppress. Portions of the video, including the field sobriety tests that Perales administered to Guerrero, were played for the jury. The court also admitted into evidence two demonstrative exhibits—videos showing eyes with and without nystagmus—over Guerrero's objection and with limiting instructions.

In addition to Officer Perales, a co-worker and a friend who were with Guerrero that evening and Guerrero's mechanic testified at the trial. Guerrero's co-worker testified that, while she was with Guerrero, he had only one Dos Equis beer to drink, that he was not intoxicated, and that he was driving his passenger home to Pasadena. Guerrero's friend testified that they each had one beer with

---

[3] Officer Perales asked Guerrero if he would prefer to speak Spanish. Because Guerrero seemed unsure, Perales switched from English to Spanish. The trial court admitted into evidence the video made on March 3 and a version of the video that included subtitles. The video with subtitles was used during the trial.

dinner, that Guerrero was not intoxicated, and that Guerrero's voice on the video sounded normal and not slurred. Guerrero's mechanic testified that after Guerrero's arrest he repaired Guerrero's vehicle because it pulled to the left. After replacing the Airo control arm, which affects the suspension, the vehicle was aligned and did not pull either to the right or to the left.

A jury found Guerrero guilty of driving while intoxicated. Following a punishment hearing, the court sentenced Guerrero to forty-four days' confinement. This appeal followed.

## Admission of HGN Test Results and Nystagmus Video

### A.    Admission of the HGN test results

In his first issue, Guerrero contends that the trial court erred in admitting Officer Perales's testimony regarding the results of Guerrero's HGN test "because the State failed to establish that the test was administered in accordance with NHTSA protocol and thus failed to satisfy the third prong of *Kelly v. State* and *Emerson v. State*, and the evidence conclusively demonstrated that the test was not administered in the required way and that its validity was compromised."

#### 1.    Standard of review

Testimony concerning HGN testing is considered scientific evidence, subject to the requirements of *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). *Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994). To constitute

6

scientific knowledge that will assist the trier of fact, the proposed testimony must be relevant and reliable. *Id.* To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and, (3) the technique was properly applied. *Id.* (citing *Kelly*, 824 S.W.2d at 573). In *Emerson*, the Court of Criminal Appeals took judicial notice of (1) the validity of the scientific theory and (2) the validity of the technique applying the theory. *Id.* at 764. Accordingly, the only remaining admissibility issue is whether the proponent of the evidence established that the officer properly applied the theory. *See id.* at 769. When administering an HGN test, an officer must follow the standardized procedures outlined in the DWI Detection Manual published by the National Highway Traffic Safety Administration (NHTSA). *Id.* at 768.

We review the trial court's denial of Guerrero's motion to suppress for an abuse of discretion. *See State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)) (stating that trial court's ruling on evidentiary issue is reviewed for abuse of discretion); *see also Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)) (stating that trial court's ruling on admissibility of scientific expert testimony is reviewed under abuse of discretion standard). We give almost total deference to the trial court's

7

determination of historical facts that depend on credibility and demeanor, but review *de novo* the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008); *see Griffith v. State*, 983 S.W.2d 282, 287–88 (Tex. Crim. App. 1998) (applying abuse-of-discretion standard to *Kelly* issue). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *see Kelly*, 824 S.W.2d at 574 (reviewing admission of DNA evidence for abuse of discretion and determining whether trial court decision was within zone of reasonable disagreement).

### 2. Officer Perales's voir dire testimony and the trial court ruling

Officer Perales testified that he received training on the standardized field sobriety tests, including the HGN, and is certified in that test. When the State offered into evidence a video of Guerrero's arrest, Guerrero objected to any testimony from Perales "about what the HGN means." Guerrero then questioned Perales outside the presence of the jury; the State did not ask Perales any questions.

Outside the jury's presence, Officer Perales was cross-examined about the three types of "passes" of a stimulus during administration of an HGN test. On the smooth pursuit passes, Perales testified that the officer moves the stimulus from the center of the face to the point of approximate maximum deviation and that he was

8

taught "to have a 45-degree angle . . . [so] no white is able to be seen in the corner of the eye." If the stimulus is held twelve to fifteen inches in front of the eyes, the forty-five degree point will be twelve to fifteen inches to either side. If the stimulus moves beyond maximum deviation, the test is not performed correctly. On the maximum deviation passes, the officer moves the stimulus to the point of maximum deviation and, at that point, holds it for at least four seconds. On the onset passes, the officer moves the stimulus to see if he observes nystagmus before the forty-five-degree point and, if onset is observed, holds the stimulus for at least four seconds to confirm the onset of nystagmus. Unless the test is performed in the standardized way, its validity may be compromised.

During the voir dire, Officer Perales was examined about whether he properly administered the test based on the video of Guerrero. Perales disagreed that the video showed that he did not properly administer the test. For example, he disagreed that he did not hold the stimulus for four seconds on the onset and maximum deviation passes.[4]

Based on Officer Perales's testimony and the video depiction of the events, Guerrero argued that Perales did not administer the test properly and thus his

---

[4]    The voir dire examination regarding the HGN test and its administration in this case is cryptic, undoubtedly because the trial judge and the lawyers were very familiar with HGN testing. A clearer presentation of the test's requirements would aid an appellate court, which generally limits its review to the record in determining whether the theory was applied properly under *Emerson*.

9

testimony about the HGN results was inadmissible under *Emerson*. The trial court denied Guerrero's motion to suppress, stating "I'm going to let it go to the jury. We'll let the weight of the evidence go to them."

### 3. The HGN test results were admissible under *Compton* and its progeny

On appeal, Guerrero contends that Officer Perales did not administer the test properly because he

> (1) moved the stimulus well beyond maximum deviation on the smooth pursuit passes; (2) did not hold the stimulus for a minimum of four seconds on all of the maximum deviation passes; (3) moved the stimulus well beyond maximum deviation on all of the maximum deviation passes; (4) moved the stimulus to and beyond 45 degrees on at least two, and probably all four, of the onset passes without stopping; and (5) did not hold the stimulus for at least four seconds on any of the onset passes.

Guerrero argues that "the evidence in this case supports only one conclusion: the deviations rendered the results unreliable."

Guerrero asserts that the State recognized that "there were differences between the administration of the HGN in this case and the NHTSA protocol[5] and relied solely on *Compton v. State*, 120 S.W.3d 375 (Tex. App.—Texarkana 2003, pet. ref'd), for admissibility." In *Compton*, the Texarkana Court of Appeals concluded that a slight variation in the administration of the HGN test does not

---

[5] The DWI Detection Manual, which includes the NHTSA protocol, is not in the record.

10

render the evidence unreliable but may affect its weight. 120 S.W.3d at 378–79; *see Plouff v. State*, 192 S.W.3d 213, 221–22 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (concluding that HGN criteria were satisfied based on evidence at pretrial suppression hearing, and stating that trial court easily could have found that any variations were slight and did not affect admissibility).[6] Guerrero argues that a standard that allows slight variations in the administration of the test to affect weight but not admissibility is a "watered-down" standard that is contrary to *Emerson*.

In *Plouff*, the Fourteenth Court of Appeals rejected an argument that *Compton* was contrary to *Emerson*.

> In *Compton*, the Texarkana Court of Appeals applied all the requirements and factors in *Emerson* and simply concluded that a police officer's slight deviation in the number of seconds taken to conduct the HGN test from the number of seconds recommended by the DWI Detection Manual did not invalidate test results otherwise indicating that defendant was driving while intoxicated. . . . [T]his opinion does not conflict with the holdings in *Emerson*. . . .The *Emerson* court did not address how courts should handle situations in which the officer follows the NHTSA technique and procedure for HGN testing but deviates slightly from the approximate times set forth by NHTSA. Therefore, *Compton* does not conflict with *Emerson*.

192 S.W.3d at 221 (citations omitted). *Compton* did not ignore either *Emerson* or the manual in reaching its conclusion. *See* 120 S.W.3d at 378 (noting that manual

---

[6] The State argues that "HGN testing and interpretation of results is clearly in the nature of a 'soft science'" rather than a "hard science." The State provides no support for the treatment of HGN as a soft science in light of *Kelly* and *Emerson*.

acknowledges that slight variations from ideal may affect evidentiary weight given results and that *Emerson* takes into account that test will not always be administered in strict conformity with officer's training); *see also Liles v. State*, No. 01-08-00927-CR, 2009 WL 3152174, at *5 (Tex. App.—Houston [1st Dist.] Oct. 1, 2009, no pet.) (mem. op., not designated for publication) (recognizing *Compton* and noting that manual provides approximations of time required for properly conducting tests). We reject Guerrero's contention that *Compton* and its progeny are contrary to *Emerson*. *See McRae v. State*, 152 S.W.3d 739, 744 n.2 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (recognizing that slight deviations in timing of HGN test have been determined not to affect HGN technique or admissibility of HGN evidence).[7]

Additionally, Guerrero asserts that the trial court could not accept Officer Perales's "conclusory statement of compliance" with the protocol "when the factual evidence, as evidenced by the videotape" showed otherwise. The record does not reflect that the trial court's ruling on the admissibility of the HGN results rests on the acceptance of a "conclusory statement of compliance" as Guerrero

---

[7]     Guerrero also states that, even if the slight deviation standard is valid law, the "deviations in the instant case were not slight or, more appropriately, there is no evidence in this record that they are only slight or do not effect the reliability of the test results found by the Court of Criminal Appeals" in *Emerson*. The trial court heard Officer Perales's testimony and viewed the video of Guerrero's HGN test as Perales testified. Any decision that the court made regarding any deviation is within the zone of reasonable disagreement and is not an abuse of discretion.

argues. During cross-examination, Perales disagreed with Guerrero's numerous suggestions that the video demonstrated a deviation from the standard. In others, he testified only that the video appeared to show the stimulus extending beyond Guerrero's shoulder based on the camera angle and his and Guerrero's positions. As seen in the video, Guerrero and Perales were standing in front of Perales's vehicle where the camera was located with Guerrero's back to the camera, obscuring much of Perales's movements during the HGN test. During parts of the test, Perales's flashlight shone into the camera. Much of the HGN test is obscured by Guerrero's body, making the video a less reliable indication of what actually happened.

Based on its assessment of Officer Perales's testimony and the video, the trial court could have reasonably concluded that Perales properly administered the HGN test. The trial court may also have found that any variations were slight and, therefore, did not affect the admissibility of Perales's testimony about the results of the HGN test. We conclude that the trial court did not abuse its discretion in allowing Perales to testify about the HGN test results.[8] *See Plouff*, 192 S.W.3d at 220–22 (concluding, based on officer's testimony and quality of video of HGN

---

[8] Guerrero also contends that the State could not rely on *Emerson*'s judicial notice of the validity of the HGN test and was required to prove that the actual technique that that Officer Perales used was scientifically valid because he did not administer the standardized HGN test. We do not reach this issue based on our determination that the trial court may have concluded that Perales administered the HGN test properly.

test, and conclusion that court may have found that any variations were slight, that trial court did not abuse its discretion in denying motion to suppress HGN evidence); *but see McRae*, 152 S.W.3d at 743–44 (holding that trial court abused its discretion in allowing testimony about HGN test when undisputed testimony established that test was not administered properly and court could not conclude that officer's error was slight variation).

## B.     Admission of the nystagmus video

In his second and third issues, Guerrero contends that the trial court erred in overruling his objection to a video showing an individual's eyes with nystagmus on an HGN test on the basis that the video (1) did not aid the jury because it was not shown to be substantially similar to the nystagmus allegedly observed in Guerrero and (2) constituted an inadmissible out-of-court experiment. In his fourth issue, Guerrero contends that the probative value of the video created substantial confusion of the issues under Texas Rule of Evidence 403. None of the arguments that Guerrero advances show that the trial court abused its discretion in admitting the video into evidence, with a limiting instruction, as demonstrative evidence to assist the jury.

### 1.     The videos depicted eyes with and without nystagmus

At trial, the State offered into evidence two videos—one showing eyes with no nystagmus in an HGN test and one showing eyes with nystagmus in an HGN

test—for demonstrative purposes. The State offered the exhibits as demonstrative exhibits that would not go to the jury room. Guerrero objected to admission of the video of the eyes with nystagmus, asserting that it was an improper experiment, would not aid the jury, and would confuse the jury.

Officer Perales testified outside the presence of the jury that the video was "HGN with nystagmus" that he had seen in classes and other presentations. The video shows an unknown individual's eyes magnified and looking straight into a camera, and displaying nystagmus. Guerrero questioned Perales regarding whether the nystagmus and clues shown in the video were similar to the ones that Perales observed in Guerrero. Perales testified that, with Guerrero, he observed "smooth pursuit, distinct, and onset" similar to those in the video, although he could not say that Guerrero's onset point of nystagmus was similar to the one in the video. Perales agreed that the maximum deviation passes on the nystagmus video had a more pronounced bounce than what he observed in Guerrero. He could not say whether the eyes on the video reflected nystagmus in the same or substantially the same way Guerrero's eyes reflected nystagmus. He testified the video was recorded inside through "eagle eyes" in which the eyes are magnified, and that he did not observe Guerrero's eyes in the same way. The eyes in the video showed impairment, but he did not know if the impairment resulted from alcohol. Perales

15

also testified that the involuntary jerking was the same as that he observed in Guerrero.

After hearing Perales's voir dire testimony and viewing the video, the trial court stated that it would allow the video "to let [the jury] see and let them know what nystagmus is" but with a limiting instruction. Guerrero agreed that a limiting instruction was "a good idea."[9]

Before the jury, Officer Perales testified that the two videos would help him explain nystagmus to the jury, that they were not videos of Guerrero's eyes on the night of his arrest, and that the videos were offered only for demonstrative purposes. When the State offered the videos into evidence, Guerrero requested the limiting instruction. The trial court admitted the videos as demonstrative evidence only and instructed the jury:

> Ladies and gentlemen, we're going to show you some photos of up-close eyes, people with and without the H—nystagmus.
>
> Now, these are things that are made under certain conditions for your—just to understand what nystagmus is. . . . This is no reflection of the defendant nor his guilt or innocence from these videos. . . .
>
> Because these are just for your education purposes. . . . Nothing about guilt or innocence in regards to these videotapes.

---

[9] Guerrero did not obtain a ruling on his objections to the video of eyes without nystagmus and does not present argument regarding admission of that video in his brief on appeal.

16

The video of an HGN test without nystagmus was played first; Officer Perales testified that the eyes did not show nystagmus on the HGN test. The video of the eyes with nystagmus was then played. Perales testified that the eyes shown on this video showed lack of smooth pursuit, distinct and sustained nystagmus, and onset of nystagmus prior to forty-five degrees, and that he observed six clues in the eyes on the video. The video of the HGN test administered to Guerrero then was played; Perales testified that he observed all six clues in Guerrero's eyes—lack of smooth pursuit, distinct and sustained nystagmus, and onset prior to forty-five degrees in both eyes.

### 2. The video was admissible demonstrative evidence

We review a trial court's admission of demonstrative evidence for an abuse of discretion. *See Onwukwe v. State*, 186 S.W.3d 81, 85 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that trial court did not abuse its discretion in admitting demonstrative evidence); *Baker v. State*, 879 S.W.2d 218, 220 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) ("The admission of demonstrative evidence rests within the sound discretion of the trial court."). A trial court does not abuse its discretion if its ruling lies within the "zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391. Before demonstrative evidence is admitted at trial, it must be properly authenticated. *Baker*, 879 S.W.2d at 220. Demonstrative evidence may be admitted to serve as a visual aid or illustration if it

17

meets the test of relevancy and materiality, as well as the limitations imposed under Texas Rule of Evidence 403. *Baker v. State*, 177 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Demonstrative evidence "is admitted solely for the purposes of illustration." *Id.*

We understand Guerrero to argue that the video was not properly admitted because it was not relevant. Guerrero asserts that demonstrative evidence must help the jury understand a witness's testimony in a meaningful way and that the nystagmus video did not do so. According to Guerrero, the nystagmus video must have depicted nystagmus that was the same or substantially similar to the nystagmus that Officer Perales observed in Guerrero. "Otherwise, the jury had no need to know what nystagmus looked like." We disagree.

Guerrero relies on *Baker* to argue that the nystagmus video must have "display[ed] nystagmus like that seen in" Guerrero's eyes to aid the jury. In *Baker*, we concluded that a large chart that approximated an offense report and was filled in with information about defendant and his arrest as the officer testified was admissible as demonstrative evidence to assist the jury during the officer's testimony.[10] 177 S.W.3d at 124. Because the chart aided the jury in understanding the testimony, the chart was relevant. *Baker* does not add a "substantially similar"

---

[10]    We also held that the trial court erred in not instructing the jury "that the chart had a purpose limited to assisting them, if it did, in understanding the officer's testimony as he testified in court," but that the error was harmless. *Baker v. State*, 177 S.W.3d 113, 124–25 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

18

requirement to establish relevancy for the admission of demonstrative evidence. *See id.* at 123 ("To be admissible, objects offered as demonstrative evidence must meet the tests of relevancy and materiality, as well as the limitations imposed by rule 403").

*Redfearn v. State*, a case that Guerrero attempts to distinguish, illustrates the use of a nystagmus video as demonstrative evidence. No. 02-09-00270-CR, 2010 WL 3377796 (Tex. App.—Fort Worth Aug. 26, 2010, no pet.) (mem. op., not designated for publication). In *Redfearn*, the court of appeals rejected the contention that a CD offered "to assist the arresting officer in explaining the effects of alcohol on a person's eyes with and without nystagmus" was inadmissible. *Id.* at *3. The court concluded that the exhibit "was not offered as substantive evidence of Appellant's intoxication, but as a tool to help the arresting police officer explain the HGN test that he performed on Appellant. . . . Under these circumstances, the CD was admissible as demonstrative evidence of what the test and procedure are in the conduct of an HGN test." *Id.* at *4 (citations omitted); *see Thrasher v. State*, No. 12-09-00334-CR, 2010 WL 2638070, at *2 (Tex. App.—Tyler June 30, 2010, no pet.) (mem. op., not designated for publication) (concluding that HGN test training video was not misleading demonstrative exhibit but was helpful to jury to understand officer's testimony about HGN test and "was clearly admissible").

19

Guerrero attempts to distinguish the video in *Redfearn* on the grounds that the video there depicted only "the 'test and procedure' of an HGN test (as opposed to how eyes looked in an intoxicated person)," while the video here not only depicted the HGN test and procedure but also the eyes of an intoxicated person. We reject this distinction; the key is that the video is a teaching tool and part of the teaching is to show the eyes of an individual who displays nystagmus during the HGN test. *See Hartsock v. State*, 322 S.W.3d 775, 779–80 (Tex. App.—Fort Worth 2010, no pet.) (holding that trial court did not abuse its discretion in admitting DVD of individual's eyes with and without nystagmus as demonstrative evidence).

In this case, the nystagmus video was proper demonstrative evidence. The video was used to assist the jury during Officer Perales's testimony explaining the HGN test procedure and the clues that an officer looks for during the test.

### 3. The video was not offered as an out-of-court experiment

Guerrero argues that the nystagmus video "was the result of an out-of-court experiment or demonstration conducted by unknown parties under unknown conditions and circumstances." Results of an out-of-court experiment generally are admissible if the experiment was made under similar conditions to the duplicated event. *Valdez v. State*, 776 S.W.2d 162, 168 (Tex. Crim. App. 1989); *Ginther v. State*, 672 S.W.2d 475, 476 (Tex. Crim. App. 1984). The experiment need not be

made under identical conditions to the event; minor dissimilarities go to the experiment's weight, not its admissibility. *Ginther*, 672 S.W.2d at 476.

*Ginther* illustrates the difference between an out-of-court experiment and a demonstrative exhibit, such as the video here. In *Ginther*, the defendant sought to introduce evidence of an out-of-court experiment at his trial for driving while intoxicated. *Id.* His experiment or re-creation involved driving tests he performed when sober, after one drink, and after two drinks to show what he would have registered on a breathalyzer. *Id.* at 476 n.3. The Court of Criminal Appeals concluded that evidence of the experiment was properly excluded because of the dissimilarities between defendant's experiment and the facts of the case. *Id.* at 477.

Here, the trial court's limiting instruction made it clear that the State did not offer the nystagmus video as an out-of-court experiment to duplicate or explain Guerrero's performance on the HGN test. Accordingly, the State was not required to establish that the nystagmus video was made under conditions similar or substantially similar to the HGN test that Officer Perales administered to Guerrero.

### 4. The video was not inadmissible under rule 403

Guerrero also argues that the probative value of the video was substantially outweighed by the danger of confusion or misleading the jury. *See* TEX. R. EVID. 403 (providing that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of issues or misleading the

21

jury"). A trial court ruling on a rule 403 objection is reviewed for abuse of discretion. *Caballero v. State*, 919 S.W.2d 919, 921 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 389).

"Misleading" refers to a jury giving undue weight to evidence on grounds other than the emotional grounds associated with unfair prejudice. *See Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Guerrero did not object at trial that the video was misleading.

"'Confusion of the issues' refers to a tendency to confuse or distract the jury from the main issues in the case." *Id.* (citing *Gigliobianco v. State*, 210 S.W.2d 637, 641 (Tex. Crim. App. 2006)); *see Henderson v. State*, 29 S.W.3d 616, 627 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating that confusion of issues occurs when introduction of contested evidence raises probability that proof and answering evidence may create side issue that will unduly distract jury from main issues). At trial, Guerrero asserted that the video risked the confusion that the jury might think Guerrero's eyes looked like the eyes on the video. The record, however, does not show that the video had any tendency to confuse or distract the jury from the main issue in the case.

Moreover, the limiting instruction that the trial court gave before the testimony about the nystagmus video avoided a risk that the jury would think that Guerrero's eyes looked like the eyes on the video. *See Gamez v. State*, 737 S.W.2d

22

315, 324 (Tex. Crim. App. 1987) (stating that presumption exists that juries will follow court's instructions). "Limiting instructions ensure that the jury does not rely on admitted evidence for an impermissible purpose." *Baker*, 177 S.W.3d at 124 (citing *Lewis v. State*, 815 S.W.2d 560, 566 (Tex. Crim. App. 1991)).

Guerrero asserts that this instruction was an "empty instruction" that did not provide a meaningful explanation of the video. He also contends that the instruction "did not instruct the jury that the video was only offered to aid them in understanding Perales's testimony." The court, however, instructed the jury that the videos were "just to understand what nystagmus is" and were not a reflection of Guerrero's guilt or innocence. After the court gave this instruction, Guerrero asked for an additional instruction that the jury not consider the videos as evidence against him. The court then instructed the jury that the videos were "just for your education purposes" and "[n]othing about guilt or innocence in regards to these videotapes." Guerrero did not object to the instruction in the trial court and has waived any complaint on appeal. *See Lankston v. State,* 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (requiring party to "let the trial judge know what he wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it").

23

**C.  Any error in the admission of the HGN test results and the nystagmus video was harmless**

Even assuming that the trial court erred in admitting the HGN test results and the nystagmus video, we conclude that any error was harmless. Error in the admission of evidence constitutes non-constitutional error that is subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see Kamen v. State*, 305 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (applying non-constitutional harm analysis to admission of HGN test results). Under rule 44.2(b), any non-constitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A conviction should not be overturned for such error if this Court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Cobb v. State*, 85 S.W.3d 258, 272 (Tex. Crim. App. 2002).

In assessing the likelihood that any error adversely affected the jury's decision, we consider the entire record, "including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be

24

considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We also may consider any jury instruction the trial court gave, the State's and the defense's theories, closing arguments, and voir dire, if material to the claim. *Id.* at 355–56.

Before the jury, the State examined Officer Perales about the nystagmus depicted in the eyes in the demonstrative video to explain nystagmus to the jury. After the demonstrative video, the State questioned Perales about the HGN test administered to Guerrero. Perales testified that he observed a total of six clues—lack of smooth pursuit, distinct and sustained nystagmus, and onset before forty-five degrees in both of Guerrero's eyes—and that these clues indicate intoxication from a drug or alcohol.

Guerrero asserts that the State emphasized the HGN and elevated its importance by presenting the nystagmus video before testimony about his results, and relying on the HGN test and nystagmus video in closing argument. The record does not indicate that the State elevated the importance of the HGN test results over other evidence, including evidence about Guerrero's performance on the other field sobriety tests. The record also does not indicate that the nystagmus video tainted the jury's perception of Guerrero's test results in any way. Officer Perales specifically stated that the eyes in that video were not Guerrero's eyes on the night

25

of the arrest, and the trial court specifically instructed the jury on the demonstrative use of the nystagmus video.

The evidence of Guerrero's HGN test results was only one portion of the evidence on which the jury may have determined that Guerrero was driving while intoxicated. Other evidence supporting Guerrero's guilt included Officer Perales's testimony that he stopped Guerrero after observing his vehicle drift into the adjoining lane several times. When he approached and talked with Guerrero, Perales observed a distinct odor of alcohol, slurred speech and glassy, red eyes. The HGN was only one of four field sobriety tests administered to Guerrero that night. Perales testified about Guerrero's performance on each of the four tests and testified that Guerrero's performance on each indicated impairment. The jury not only heard Perales's testimony, including any contradictions and inconsistencies elicited on cross-examination, but also viewed the video made the night of the arrest. Perales arrested Guerrero based on what he observed that night, including the "distinct odor of alcoholic beverage on his breath, the slurred speech, the glassy, red eyes." When asked to provide breath and blood samples, Guerrero refused. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (concluding that defendant's refusal to submit to breath test is relevant to prove intoxication because it "tends to show consciousness of guilt").

We conclude that any error in the admission of Guerrero's HGN test results and nystagmus video did not affect Guerrero's substantial rights and was harmless in the context of the record as a whole, including the other evidence admitted at trial and the court's limiting instruction regarding the nystagmus video.

We overrule each of Guerrero's issues.

## Conclusion

Having overruled each of Guerrero's issues on appeal, we affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. Tex. R. App. P. 47.2(b).